William E. SPRADLIN *v.* ARKANSAS ETHICS COMMISSION, Richard L. Mays, Mary Lynn Reese, Ronald A. May, Kemal Kutait and Mack R. Koonce, in their Official Capacities as Members of the Arkansas Ethics Commission

92-371 858 S.W.2d 684

Supreme Court of Arkansas
Opinion delivered July 19, 1993
[Rehearing denied September 13, 1993.*]

---

*Special Chief Justice Martin Gilbert and Special Justices Cyril Hollingsworth, James R. Wallace, Scotty Shively, and Don Hamilton join. Special Justice Sherry Bartley would grant rehearing. Special Justice Larry Wallace not participating.

*Karr, Hutchinson & Stubblefield*, by: *W. Asa Hutchinson* and *Hilburn, Calhoon, Harper, Pruniski & Calhoon, Ltd.*, by: *Bob R. Brooks, Jr.*, for appellants.

*Winston Bryant*, Att'y Gen., by: *Dinah M. Dale*, Asst. Att'y Gen., for appellee.

MARTIN G. GILBERT, Special Chief Justice. Appellants challenge the constitutionality of that portion of Initiated Act No. 1 of 1990 (the "Act") which created the Arkansas Ethics Commission (the "Commission") on the ground that by providing for the appointment of one of the commissioners by the Chief Justice of the Arkansas Supreme Court, the Act violates the separation of powers provision of the Constitution of Arkansas. Appellants also challenge the specific appointment made by the Chief Justice as not meeting the requirement of the Act that one of the commissioners be a "member of a minority political party."

The Act, bearing the popular name "The Standards of Conduct and Disclosure Act for Candidates and Political Campaigns," was approved by the voters of Arkansas at the general election on November 6, 1990. In general, the Act regulates political action committees, solicitations by and contributions to political candidates, the use of campaign funds and compensation of members of the General Assembly for making speeches and other appearances, and requires certain reports by candidates.

Section 6 of the Act, codified as Ark. Code Ann. § 7-6-217, provides, among other things, for the creation of the Commission, to be composed of five members, one each to be appointed by the Governor, the Attorney General, the Chief Justice of the Supreme Court, the Speaker of the House of Representatives and the President Pro Tem of the Senate. Commission members serve staggered five-year terms without compensation, but they are reimbursed for their actual and reasonable expenses.

The Act requires that "[i]n making appointments to the commission, the appointing officers shall insure that at least one member of a minority race, one woman, and one member of a minority political party, as defined in [Ark. Code Ann. §] 7-1-101(7), serves on the commission." Ark. Code Ann. § 7-6-217(b).

In due course, the designated officials made their respective appointments to the Commission. Supreme Court Chief Justice Jack Holt, Jr., appointed Little Rock attorney Ronald A. May, identifying him as a member of a minority political party. It is not contended that any of the other appointees are members of a

minority political party.

Appellants filed this action in the Circuit Court of Pulaski County, challenging the constitutionality of the method of appointing the members of the Commission and also challenging the appointment of Mr. May as a member of a minority political party. The Circuit Court granted summary judgment in favor of appellees, dismissing appellants' complaint. This appeal followed.

Jurisdiction is properly in this Court under Rule 1-2(a)(1) of the Rules of the Supreme Court and the Court of Appeals, because it involves the interpretation or construction of the Constitution of Arkansas.

Article 4 of the Constitution of Arkansas provides for three departments of government:

§ 1. *Departments of government.*

The powers of the government of the State of Arkansas shall be divided into three distinct departments, each of them to be confided to a separate body of magistracy, to wit: Those which are legislative to one, those which are executive to another, and those which are judicial to another.

Article 4 also provides for the separation of those departments:

§ 2. *Separation of department.*

No person, or collection of persons, being one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted.

In *Oates* v. *Rogers*, 201 Ark. 335, 144 S.W.2d 457 (1940), this court dealt with the question whether an act designating the judges of the chancery, circuit and county courts to select the county tax collector violated the constitutionally mandated separation of powers. Speaking through Chief Justice Griffin Smith, we noted the two opposing philosophies regarding the federal separation of powers expressed by Mr. Justice Sutherland (speaking for the majority) and Mr. Justice Holmes (dissenting

for himself and Mr. Justice Brandeis) in *Springer* v. *Phillipine Islands*, 277 U.S. 189 (1928) . Mr. Justice Sutherland espoused the more strict view, namely, that the separation of the departments of government "is basic and vital—not merely a matter of governmental mechanism" and should be vigorously protected. Mr. Justice Holmes, representing the more liberal view, believed that the United States Constitution did not "establish and divide fields of black and white," but "a penumbra shading gradually from one extreme to the other," concluding that it was not necessary to carry out the separation of powers with "mathematical precision and divide the branches into watertight compartments." We observed that it was impossible to harmonize the extreme views expressed by these eminent justices. *Oates* v. *Rogers*, 201 Ark. at 338-39, 144 S.W.2d at 457.

After reviewing various cases from Arkansas and other jurisdictions regarding the legislative designation of the power of appointment, we said:

> The duties of collector are in no sense related to the administration of justice; and, while certain activities not essentially judicial may be imposed upon judges in those cases where by the constitution such duties do not inhere in another department of the government, in the instant case the delegated authority is of that class set aside to the executive department.

> In most instances judges are—and in all cases they should be—free from political pressure and beyond the reach of partisan influence.

> . . . .

> Common knowledge teaches, and experience informs us, that most people who apply for public office have the backing of influential friends, and are themselves prominently connected. Unfortunately we have not reached that ideal state where friend interested in friend will circumscribe his or her activity merely because the appointive power is judicial.

> Judges should not be subject to these experiences. Our system, providing as it does for distinct separation of departments, did not in its inception contemplate a blend-

ing of authority; and overlapping must not be permitted now at the command of expediency or in response to the nod of convenience.

. . . .

. . . [S]ince the nature of the act of appointment is essentially non-judicial, and therefore not to be exercised by circuit and chancery judges . . . it must be held that the . . . act fails. *Oates* v. *Rogers*, 201 Ark. at 345, 144 S.W.2d at 458.

■ While there is sparce judicial precedent on the subject, it appears to be generally concluded that in the absence of specific constitutional authority, the legislature may not authorize or require courts to appoint officers who have nothing to do with the administration of justice. 16 *Am. Jur. 2d, Constitutional Law* § 313; 16 *C.J.S., Constitutional Law* § 212.

Appellees concede that the judiciary may not be delegated the power to appoint unless the object of that power is related to the administration of justice. Appellees argue, however, that such a relationship exists here because the primary function of the Commission is "quasi-judicial" in nature.

■ The Act provides that the Commission shall have the authority to issue advisory opinions and guidelines, investigate alleged violations and render findings and disciplinary action thereon, subpoena persons and documents, administer oaths, conduct hearings and take sworn testimony, hire a staff and legal counsel and approve forms prepared by the Secretary of State pursuant to the Act. These are powers of the sort often possessed by boards, commissions and agencies, and we have held on many occasions that a body having such powers is not thereby judicial in nature or a part of the judicial department of government. See *Ozarks Electric Cooperative Corporation* v. *Turner*, 277 Ark. 209, 640 S.W.2d 438 (1982); *Ward School Bus Manufacturing, Inc.* v. *Fowler*, 261 Ark. 100, 547 S.W.2d 394 (1977); and cases cited therein. While at times there may be difficulty in discerning whether particular boards, commissions or other agencies are a part of the legislative department or the executive department—or perhaps belong to some *de facto* fourth department of government—there can be no doubt that they are *not* a part of

this, the judicial department. See Stafford, "Separation of Powers and Arkansas Administrative Agencies: Distinguishing Judicial Power and Legislative Power," 7 *UALR L.J.* 279 at 280-81 (1984).

■■ Appellees go to great length to establish that the powers exercised by the Commission are "quasi-judicial" in nature. But we have not been cited to and we are not aware of any case holding that a body which exercises quasi-judicial functions is thereby a part of the judicial department or related to the administration of justice. We have noted previously that an important factor in determining whether a particular body is acting in a judicial capacity or is part of the judicial department of government is the ability of that body to enforce its own orders. *Ward School Bus Manufacturing, Inc.* v. *Fowler*, 261 Ark. 100, 547 S.W.2d 394 (1977). Here, the Commission sought to be established by the Act would be authorized to investigate alleged violations and to "render findings and disciplinary action thereon." Ark. Code Ann. § 7-6-217(h)(2). At first blush that might seem to be akin to some sort of judicial action—rendering findings, perhaps after a hearing at which witnesses are subpoenaed and sworn, and taking some sort of disciplinary action. But a closer reading of the Act reveals that the only action which the Commission can take upon finding a violation is to do one or more of the following: "(A) Issue a public letter of caution or warning; or (B) Report its finding, along with such information and documents as it deems appropriate, and make recommendations to the proper law enforcement authorities." Ark. Code Ann. § 7-6-218(b)(4). Thus, it is apparent that the Commission has no power whatever to make any orders, much less to enforce them. The only "disciplinary action" it can take is to make public a letter declaring what it has found in the way of a violation. That is hardly action which is judicial in nature or related to the administration of justice.

Appellees also rely upon decisions in Louisiana and Kansas which upheld similar bodies whose members were appointed by both the legislative and executive branches (*Board of Ethics for Elected Officials* v. *Green*, 566 So.2d 623 (La. 1990); and *Parcell* v. *Governmental Ethics Commission*, 639 F.2d 628 (10th Cir. 1980), in which the Kansas Supreme Court answered a question certified to it by the Tenth Circuit). These courts reviewed the

degree of control exercised by the appointers over the appointees and, finding little or none, concluded that neither branch had usurped the powers of the other branch. The fact that the bodies were a blending of powers of different branches was not objectionable.

First, we point out that these cases did not involve an appointment by a member of the judicial department and are distinguishable on that basis. It has been observed that while we may tolerate some blurring of lines between the legislative and executive departments, this court has been very protective of the barrier surrounding the judicial department. See Stafford, "Separation of Powers and Arkansas Administrative Agencies: Distinguishing Judicial Power and Legislative Power, " 7 *UALR L.J.* 279 at 280-81 (1984).

These two cases from neighboring states are also distinguishable on the basis of differences in the specific constitutional provisions under consideration. The Louisiana Constitution contains a provision designating the Governor to make all appointments in the executive branch not otherwise "provided constitution or by law." In *Green* the Louisiana Supreme Court held that this language authorized the legislature "by law" to provide for the appointment of executive branch persons by other than the Governor—specifically, by the legislature itself. There is no such appointment provision in the Arkansas Constitution. And, the Kansas Constitution contains no express separation of powers provision, as does the Arkansas Constitution (although a separation of powers doctrine has been adopted by Kansas case law).

Finally, *Green* and *Parcell* represent approval of a sort of "blending" of the powers of two departments of government. The Kansas court described that Ethics Commission as a "cooperative venture rather than the usurpation of power by the legislative branch from the executive branch," and held that this "practical result of the blending of the powers . . . was not a violation of the separation of powers doctrine." *Parcell* v. *Governmental Ethics Commission*, 639 F.2d at 633-34. In *Oates* v. *Rogers* we specifically rejected the notion of a "blending" of powers in favor of a more strict separation of powers when we said: "Our system, providing as it does for distinct separation of departments, did not in its inception contemplate a blending of

authority; and overlapping must not be permitted now at the command of expediency or in response to the nod of convenience." *Oates* v. *Rogers*, 201 Ark. at 346, 144 S.W.2d at 458.

 In the case before us, the Commission, as structured by the Act, is not related to the administration of justice and is not part of the judicial department of government. We hold that by designating the Chief Justice of the Supreme Court to appoint one of the members of the Commission, that portion of the Act creating the Commission violates the separation of powers and is unconstitutional.

Given our decision on this issue, the second issue raised by appellants—the appointment of Mr. May—is moot. But, we would have upheld the appointment of Mr. May for the reason that there is no objective standard in the Act by which one can determine whether an appointee is a "member of a minority political party," and we would give great deference to the discretion of the appointer and great weight to the circuit court as the fact-finder on that issue. While the evidence suggests that Mr. May may not have been considered a currently active, loyal Republican by some in the leadership of the Arkansas Republican Party, there is also evidence of at least *some* voting by Mr. May for Republican candidates and contributing by Mr. May of money to Republican candidates and causes in relatively recent times. And there is direct testimony by Mr. May himself that he currently considers himself to be a Republican and holds himself out publicly to be a Republican. Under these circumstances, we would have affirmed the judgment of the circuit court on that issue.

The judgment is reversed and remanded to the circuit court with directions to enter judgment not inconsistent herewith.

\* \* \* \* \*

Special Justices Sherry P. Bartley, Cyril Hollingsworth, Scotty Shively and James R. Wallace join in the foregoing opinion.

Special Justice Don F. Hamilton and Larry C. Wallace dissent.

DON F. HAMILTON, Special Associate Justice, dissenting.

Appellants filed this taxpayer's suit challenging the constitutionality of Initiated Arkansas Act No. 1 of 1990 known as the Standards of Conduct and Disclosure Act for Candidates in Political Campaigns ("Ethics Act"). Appellants also challenge the present makeup of the Ethics Commission (created by this Act) on the basis that the selection of the member of the Commission designated to represent the minority party, *i. e.*, the Republican party, violates the requirements of the Ethics Act.

The Ethics Act was approved by the voters on November 6, 1990, by a vote of 355,957 for and 186,204 against. Prior to the election, according to Tim Hutchinson in his affidavit supporting appellants' claim in this case, Mr. Hutchinson served as a member of the Arkansas Ethics Committee which was created to conduct hearings across the state and to draft legislation to be presented to the voters; and, as a result of the work of this committee a petition drive was initiated which resulted in the adoption of the Ethics Act. Mr. Hutchinson participated in the hearings across the state, as well as in the meetings devoted to working on draft legislation. He objected to the establishment of a commission under the proposed Ethics Act because he felt it would invite "political witch hunts" that would be dominated and controlled by the party in power. The drafting committee's "common understanding" was that the "minority party" member of the Ethics Commission would act as a "watch dog" for the minority political party.

The Ethics Act provides, *inter alia*, that the Arkansas Ethics Commission is to be composed of five members, one each appointed by the Governor, Attorney General, Chief Justice of the Arkansas Supreme Court, Speaker of the House of Representatives and President *Pro Tem* of the Arkansas Senate. Ark. Code Ann. § 7-6-217(a). It further provides that the appointing official shall insure that at least "one member of a minority political party, as defined in Ark. Code Ann. § 7-1-101(7), serves on the Commission." Ark. Code Ann. § 7-6-217(b).

Subsequent to the enactment of the Ethics Act, the commission members were appointed including Ronald A. May, who was appointed by Chief Justice Jack Holt, Jr. to be the "minority party" member of the Commission. The individual appellant, William E. Spradlin, and the Republican party of Arkansas filed

suit and challenged the appointment process under the Ethics Act as being in violation of the separation of powers provision of the Arkansas Constitution. Appellants also challenged the appointment of Ronald A. May as a minority member of the Commission contending that he is not qualified since he was no longer voting in Republican primaries or active in any degree with the Republican Party of Arkansas.

The case was submitted to the trial court on motions for summary judgment filed by all parties to the suit, and the trial court entered summary judgment dismissing the complaint. On appeal, appellants contend that the Ethics Act violates the separation of powers provisions of the Arkansas Constitution because (1) the Commission is appointed by the three different branches of government and (2) the judiciary is required to make appointments in an area not related to the administration of justice. Finally, appellants contend that the person selected in accordance with Ark. Code Ann. § 7-6-217, *i.e.* Ronald May, does not meet the qualifications of the Republican party, as required by the Ethics Act.

It is well settled under the law of Arkansas that a statute is presumed to be constitutional and will only be struck down where there is a clear incompatibility between the statute and the state constitution. *Clinton* v. *Clinton*, 305 Ark. 585, 810 S.W.2d 923 (1991). *Hickenbotham* v. *McCain*, 207 Ark. 485, 181 S.W.2d 226 (1944). If it is possible to construe a statute so that it meets the test of constitutionality, the statute should be construed to be constitutional. *Arnold* v. *Kemp*, 306 Ark. 294, 813 S.W.2d 770 (1991). *Taylor* v. *Finch*, 288 Ark. 50, 701 S.W.2d 377 (1986).

Arkansas's separation of powers provisions are set out in Article 4, Sections 1 and 2 of the state constitution:

> § 1. The powers of the government of the State of Arkansas shall be divided into three distinct departments, each of them to be confided to a separate body of magistracy, to wit: Those which are legislative to one, those which are executive to another, and those which are judicial to another.

> § 2. No person, or collection of persons, belonging to one of these departments, shall exercise any power belong-

ing to either of the others, except in the instances hereinafter expressly directed or permitted.

Unlike the federal constitution, there is no general appointment power in the state constitution authorizing the chief executive to make appointments to boards and commissions. The Arkansas constitution is silent on that point, although specific grants of the appointment power are made to the Governor in several instances. Neither of the separation powers sections of the Arkansas Constitution provides that the appointment power is restricted exclusively to any one branch of government.

Appellants concede that (1) the appointment power is not exclusively in the executive branch and that the legislature may exercise the appointment power in certain circumstances, citing *Cox v. State*, 72 Ark. 94, 78 S.W. 756 (1904); and, (2) that the appointment power may be delegated in limited circumstances to the judiciary, citing *Mears v. Hall*, 263 Ark. 827, 569 S.W.2d 92 (1978). But appellants argue that the appointment power may not be delegated to all three branches of government simultaneously and in regard to the same commission, such as the Ethics Commission, as set forth in Ark. Code Ann. § 7-6-217(a). Furthermore, and, in any event, appellants argue that the Ethics Commission is not related to the administration of justice, citing *Oates v. Rogers*, 201 Ark. 335, 144 S.W.2d 457 (1940), which appellants argue is dispositive of this case.

In *Oates v. Rogers, supra*, the legislature enacted legislation creating the office of tax collector for Pulaski County which provided that the tax collector would be appointed by the judges of the circuit, chancery, and county courts acting together with a term of five years subject to removal at any time by a majority vote of the judges. The Arkansas Supreme Court held that the duties of the collector were "in no sense related to the administration of justice . . ." and ". . while certain activities not essentially judicial may be imposed upon judges in those cases where by the constitution such duties do not inhere in another department," the authority to appoint the tax collector could not be delegated to judges because ". . . the delegated authority is of that class set aside to be the executive department." 201 Ark. at p. 345.

In *Clinton v. Clinton, supra*, a statute giving the Governor

the power to appoint special Public Service Commissioners was held to be constitutional, despite the argument that such a power of appointment could not constitutionally be delegated to the Governor by a legislative act. In *Clinton*, the case of *Oates* v. *Rogers, supra*, was discussed and it was pointed out that while the power to appoint the county tax collector could not be delegated to the judiciary by legislative act, under the ruling in *Oates* certain delegations of the appointment power by the legislature are sanctioned, ". . . thus leaving the door open to permissible delegations of authority by the legislature" under the *Oates* ruling. *Clinton* v. *Clinton, supra*, at p. 305.

Surely the limits of "permissible delegations of authority" must be determined by deciding in each case whether the actual power of any department is diminished or given an overruling influence over another in the administration of its respective powers. *Oates* v. *Rogers, supra* at p. 339 and p. 340. Under the rationale of *Oates* v. *Rogers, supra*, if the delegated authority, *i.e.*, appointment by the Chief Justice of a member of the minority political party is (1) "of that class set aside to the executive department" or (2) "it is in no sense related to the administration of justice" (except certain activities not essentially judicial involving duties not inhering in another department), such delegated authority is unconstitutional, which is not the case here.

Although appellants complain that the Ethics Commission members are appointed by three different branches of government, there is no convincing argument or evidence even suggesting that the exercise of the respective appointment powers diminishes the power of one department of government over another, let alone that the exercise of such power gives an overruling influence over another department in the administration of its respective powers. The concept of appointment power delegated to all three branches of government simultaneously is not novel to Arkansas. Nine members of the Judicial Discipline and Disability Commission, created by Ark. Acts No. 637 of 1989, Ark. Code Ann. § 16-10-401 *et seq.* (as authorized by amendment 66 to the Arkansas Constitution), are similarly appointed by the three branches of government. However, the litigation over various issues before that Commission has not involved the method of appointment of members or composition

of the Judicial Discipline and Disability Commission. *Judicial Discipline and Disability Commission* v. *Digby*, 303 Ark. 24, 792 S.W.2d 594 (1990); *In re: Switzer*, 303 Ark. 288, 796 S.W.2d 341 (1990); *Gannett River States Publishing Co.* v. *Judicial Discipline and Disabilities Commission*, 304 Ark. 244, 801 S.W.2d 292 (1990).

In Stafford, *Separation of Powers and Arkansas Administrative Agencies: Distinguishing Judicial Power and Legislative Power*, 7 U.A.L.R. L.J. 279 (1984), the author in a comprehensive article regarding separation of powers and Arkansas administrative agencies has observed that ". . . [t]he Arkansas Supreme Court seems to have accepted the blending of executive and legislative powers that characterizes many administrative agencies", citing *Hickenbotham* v. *McCain*, *supra*, and further that ". . . [it] can likewise sanction some blending of judicial and legislative powers without sacrificing the basic purposes underlying the separation of powers doctrine," noting the *dicta* from *Oates* v. *Rogers*, *supra*, that the Arkansas "system, providing as it does for distinct separation of departments, *did not in its inception* contemplate a blending of authority . . .". (Emphasis added) 7 U.A.L.R. L.J. at p. 279. Clearly, administrative agencies may possess a combination of powers from the coordinate branches without violating the separation of powers principle; and, moreover, the real issue deals with a review of the powers. *Arkansas Motor Carriers* v. *Prichett*, 303 Ark. 620, 798 S.W.2d 918 (1990). There is simply no convincing argument or evidence that the method of appointment by the three branches of the departments of government of the members of the Ethics Commission establishes a violation of the separation of powers principle any more than the blending of powers by certain administrative agencies in Arkansas violates that principle, as discussed in *Stafford, op. cit. supra*; and, appellants' challenge in this regard, accordingly, is without merit.

In *Board of Ethics for Elected Officials* v. *Green*, 566 So.2d 623 (La. 1990), the court upheld a statute authorizing the legislature to appoint some members of the Board of Ethics for elected officials. The court held that the key focus of the constitutional question was the degree of control retained over appointees by the appointing entity. In *Green*, there was little or no control retained, as evidenced by the fact that: 1) the members

of the board were appointed for staggered 6-year terms and could only be removed for cause; 2) legislators and other public servants could not be appointed; and 3) there was no continuing relationship between the legislature and the appointees. Therefore, the court upheld the statute. All of these factors demonstrating the absence of improper legislative control are present in the Arkansas act; and, it should be noted that in *Chaffin v. Arkansas Game and Fish Commission*, 296 Ark. 431, 757 S.W.2d 950 (1988), the Arkansas Supreme Court stated that the question of whether members of the legislature may be constitutionally empowered to appoint other officers may depend to some extent upon the amount of control retained over these officers.

Similarly, in *Parcell v. Governmental Ethics Commission*, 468 F. Supp. 1274 (D. Kan. 1979), aff'd 639 F. 2d 628 (10th Cir. 1980), the federal circuit court of appeals certified to the Kansas Supreme Court the question of whether the appointment of members of the governmental ethics commission, a majority of which were appointed by legislators, constituted a usurpation of executive power by the legislative branch of government and thereby violated the separation of powers doctrine. The Kansas court held that it did not. 639 F.2d at 629.

In *Parcell*, the commission consisted of eleven members, five of whom were appointed by the governor, two by the president of the senate, two by the speaker of the house, one by the minority leader of the house, and one by the minority leader of the senate. The court employed the test which looks to several factors to determine whether a usurpation of power exists. These factors include the essential nature of the power being exercised, the degree of control by the legislative department, whether there is a coercive influence or a mere cooperative venture and the nature of the objective sought to be obtained. The court held that clearly the commission exercised powers ascribed to the legislative and executive branches, but still found no usurpation. The court reasoned that the act represented a cooperative venture, rather than a usurpation of power, and the objective to be atoned by the legislature, to increase the public trust in Kansas elected officials, was satisfied by the legislature's attempt to insure fair consideration by dividing the power of appointment between the legislative and executive departments.

The reference in the majority opinion here to part of the quotation of Mr. Justice Holmes' dissenting option in *Springer* v. *Philippine Islands, supra,* set out in *Oates* v. *Rogers,* supra. at p. 339, seems to contain persuasive reasoning for upholding the constitutionality of the delegation of the appointment power in the Ethics Act, as opposed to the unconstitutional delegation of the appointment power of a county tax collector in *Oates* v. *Rogers, supra.* Justice Holmes stated in *Springer* as follows, *id.,* at p. 339:

> "The great ordinances of the constitution do not establish and divide fields of black and white. Even the more specific of them are found to terminate in a penumbra shading gradually from one extreme to the other. . . . It does not seem to need argument to show that however we may disguise it by veiled words we do not and cannot carry out the distinction between legislative and executive action with mathematical precision and divide the branches into watertight compartments, were it ever so desirable to do so, which I am far from believing that it is, or that the constitution requires."

Appellants' argument that the Ethics Act requires the judiciary to make appointments in an area not related to the administration of justice seems to overlook the specific duties and responsibilities of the Ethics Commission created by the act. Appellees have correctly characterized the Commission as "quasi-judicial" in nature because the Commission has the authority to hold hearings, issue advisory opinions, investigate violations of the Act, and subpoena persons and documents, Ark. Code Ann. § 7-6-217(h); and appellees rely on *Mock* v. *Chi R. I. & Pac. Co.,* 454 F. 2d 131 (8th Cir. 1972) in this regard. In *Mock,* the parties argued over the nature of the administrative proceeding before the National Railroad Adjustment Board; and, the Eighth Circuit Court of Appeals stated that a proceeding is "quasi-judicial" in nature where the function of the administrative body under consideration involves the exercise of discretion and the application of legal principles to varying factual situations and requires notice and hearing. 454 F.2d at p. 134.

Regardless of the nature of the Ethics Commission, how should the term "administration of justice" be construed within

the context of *Oates* v. *Rogers, supra*? Bar disciplinary proceedings have been held to fall within the scope of the administration of justice in some instances, *In re Haws*, 310 Or. 741, 801 P.2d 818, 823 (1990); and, the Oregon Supreme Court has stated that "[o]ther proceedings that contain the trappings of a judicial proceeding, such as sworn testimony, perjury sanctions, subpoenas, and the like, similarly would qualify as being within the confines of the administration of justice." 801 P.2d 818.

The Ethics Act authorizes the Ethics Commission to issue advisory opinions and guidelines on the requirements of the campaign financing statutes, as set forth in Ark. Code Ann. § 7-6-201, *et seq.*, as well as the ethics and conflicts of interest statutes contained in Ark. Code Ann. § 21-8-203, *et seq.*, and; the Ethics Commission is authorized to investigate alleged violations of these statutes and render findings and disciplinary action in connection with the violations. Ark. Code Ann. § 7-6-217(h)(2). Citizen complaints against a person may be filed regarding matters covered by these statutes. The filing of such a complaint triggers an investigation by the Ethics Commission and a possible public hearing in the event there is probable cause. If the Ethics Commission finds that a violation of any of the statutes has occurred, the Commission may: (1) issue a warning letter and/or (2) report its findings and make recommendations to the proper law enforcement authorities for appropriate action. Ark. Code Ann. § 7-6-218. These statutes, including the campaign financing statutes (Ark. Code Ann. § 7-6-201), are applicable to all public officials and employees not excepted, including members of the judiciary. As observed by the trial court in his judgment dismissing appellants' complaint, this gives some justification to provide the judiciary an appointment power.

While the ethical behavior as mandated by law of public officials or those who seek election to public office may not be viewed typically as an area related to the administration of justice, there can be little doubt that such ethical behavior by members of the judiciary is in a very real sense related to the administration of justice, if not the most vital part of its very core. At any rate, the duties of the Ethics Commission here are totally unlike those of the tax collector to be appointed by the judiciary in *Oates* v. *Rogers, supra*, which is clearly distinguishable.

In *Martin* v. *Melott*, 320 N.C. 518, 359 S.E.2d 783 (1987), suit was brought challenging the constitutionality of a state statute giving the Chief Justice of the Supreme Court of North Carolina appointment power of the Director of Administrative Hearings. In *Martin*, the North Carolina Supreme Court held that the General Assembly could delegate this power to appoint without violating the separation of powers clause of the State Constitution. While the majority of the members of the Supreme Court in *Martin* v. *Melott*, *supra*, held the power of appointment was constitutional because of the nature of the Chief Justice's appointment power, the concurring member of the North Carolina Supreme court declared the separation of powers issue should turn not on the "nature" of the appointment power, but on the nature of the powers and duties exercised by the person appointed which he viewed to be "primarily judicial in nature" and, therefore, not violative of the separation of powers.

In the concurring opinion of *Martin* v. *Melott*, *supra*, the importance of the principles of separation of powers is recognized as being "fundamental and unquestioned". Id., at p. 789. The concurring justice relied on the same two United States Supreme Court opinions cited in *Oates* v. *Rogers*, *supra* at pp. 338 through 340, *O'Donoghue* v. *United States*, 289 U.S. 516 (1933) and *Springer* v. *Philippine Islands*, 277 U.S. 189 (1928), and quoted *O'Donoghue* as follows, *Martin* v. *Melott*, *supra* at p. 788:

> "This separation is not merely a matter of convenience or of governmental mechanism. Its object is basic and vital, *Springer* v. *Philippine Islands* (citations omitted) namely, to preclude a commingling of these essentially different powers of government in the same hands."

Under the analysis of the Supreme Court in *Oates* v. *Rogers*, *supra*, it can not reasonably be concluded that the power of the Arkansas Supreme Court Chief Justice to appoint a member of the "minority party" to the Ethics Commission in any way diminishes the power of the two other branches of government, let alone gives the judiciary an overruling influence over another branch of government in the administration of its respective powers. The member appointed by the Chief Justice is not in any way under the control of the judiciary, let alone even permitted to serve consecutive terms. Finally, the Ethics Commission is in a

very important sense "related to the administration of justice" within the holding of *Oates* v. *Rogers*, *supra*, because its nature is not only quasi-judicial, but it also serves a vital purpose directly affecting the behavior and conduct of members of the judiciary, as office holders, and, as office seekers; and, therefore, the Chief Justice's power of appointment does not violate the separation of powers required by the Arkansas Constitution.

As to appellants' contention challenging the appointment of Ronald May as the member of "a minority party" on the Ethics Commission because he allegedly "does not meet the qualifications of Republican party membership required by the initiated Act," this contention is wholly without merit.

In the first place the Ethics Act does not require such "membership", as alleged. While it is true that the Republican party currently meets the statutory definition "of a minority party", there is no statutory definition of "membership." This appears to be a matter of "intent" more than something that can be documented or completely objectively established. Suffice it to say that Ronald May gave sworn testimony by deposition in which he unequivocally stated he has been and still is a Republican. His long history of involvement with the Republican party in Arkansas going back to the 1960's when he was named General Counsel to the Republican party in 1968 is well established. In recent years, since he voted for Richard Nixon in 1972, he stated that he had not voted for Republican presidential candidates. He has voted in the Democratic primaries for over the past decade because his interest in voting for judges made him feel that he was depriving himself of the right to vote for judges in Arkansas since judges in Arkansas are almost universally elected at the Democratic primary; and, moreover, usually the Republican party fielded only candidates for the constitutional offices so that the Republican primary was not very significant. Nonetheless, Mr. May remains a member of a national organization of Republicans, The Ripon Society, he is listed as a Republican in *Who's Who in America*, and he contributes to and supports Republican candidates in Arkansas and expects "to vote for the most part Republican candidates" in the future; and, most recently he was "very strong" in his support for Jim Keet, a successful Republican candidate for the Arkansas legislature from Pulaski County.

In his affidavit, Chief Justice Jack Holt stated that he "selected Ronald May because of his integrity and high principles"; and that, secondarily, Mr. May was known by him to be a Republican. Ronald Mays' integrity and high principles can not be doubted, as perhaps so clearly is evidenced by his efforts during the 1960's to correct voting irregularities which Winthrop Rockefeller and his supporters worked so diligently to end, and which Mr. May testified about in his deposition. Appellants' counsel in oral argument referred to May as a "fine public servant", who does not meet the "level of Republicanism needed" — apparently as evidenced by (1) a communications problem with the current leadership of the Republican party and (2) a certain letter to a newspaper editor written by May and published in a local newspaper in 1991, characterized as "hostile".

According to appellants' counsel, it is appellants' position that the Ethics Law "requires that the appointing official or the person who appoints a member of the minority party in Arkansas should consult with a party chairman and possibly pick from a list of approved persons." May himself thoroughly refuted this argument in his deposition, as follows:

"Well, that's not what the law says. If that had been the intention of the law it would have been very easy to write it into the law. On the other hand, the law does not say that the appointing person who appoints a member of a minority race has to consult with the NAACP. I realize the analogy isn't completely exact, but I think that it is perfectly possible for the appointing official to know who are Republicans in the state and to pick someone out without consulting with the leadership of the contemporary and perhaps transitory leadership of the Republican party.

"He could very well, for example, have consulted with Judge Smith Henley, who's probably been a Republican longer than most of us have been alive. I don't think he did, but I think that would have been as equally valid a way to appoint a member of the Commission."

The trial court noted that proving membership in a political party seems somewhat analogous to proving the intent necessary to establish "domicile"; and the court concluded that "there are

more facts that confirm that Mr. May is a Republican" than otherwise. Since the trial court's findings of fact in connection with Mr. May's membership in the Republican party should not be set aside unless clearly erroneous under Rule 52, Arkansas Rules of Civil Procedures, this determination must stand since the trial court's finding in that regard is not clearly erroneous; and, accordingly, appellants' challenge to Mr. May's appointment should be rejected.

For the reasons herein expressed, I would affirm the trial court's judgment dismissing the complaint and upholding the constitutionality of the Ethics Act, as well as the appointment of Ronald May as the duly appointed member of the Ethics Commission representing "a minority party" in accordance with the requirements of that act. I respectfully dissent from the determination set forth in the majority opinion holding unconstitutional that part of the Ethics Act which authorizes the Chief Justice of the Arkansas Supreme Court to appoint one of the members of the Ethics Commission.

Special Associate Justice LARRY WALLACE joins in this dissent.