The Honorable Jim Luker State Senator Post Office Box 216 Wynne, AR 72396-0216
Dear Senator Luker:
I am writing in response to your request for an opinion regarding Senate Bill 18, currently pending before the 86th General Assembly. You note that the bill contains a provision creating a "Drug Court Advisory Committee" consisting of representatives from the legislative, judicial and executive branches of government. You note further that this Drug Court Advisory Committee is provided with authority to approve a "formula for equitable funding of drug court programs among judicial districts. . . ." You then request an opinion as follows:
 In our consideration of the bill in the Judiciary Committee of the Senate, questions were raised about whether the makeup of the Advisory Committee and the specific authority which the Committee is provided are consistent with the provisions of the Arkansas Constitution and relevant case law. Your opinion on this issue is respectfully requested.
RESPONSE
In my opinion, Arkansas Constitution Article 5, Section 10, and Article 4, Sections 1 and 2 ("separation of powers"), prevent the service of members of the Senate and House of Representatives on the "Drug Court Advisory Committee" (hereinafter "Committee") created under SB 18. Additionally, members of the judicial branch are in my opinion prohibited from serving on the Committee by the separation of powers doctrine and Arkansas Constitution Amendment 80, Section 16(f). In my opinion, Arkansas Constitution Article 19, Section 6, prevents the *Page 2 
Chair of the Board of Corrections from serving on the Committee. To this extent, therefore, the Committee's makeup is unconstitutional, in my view.
It will be helpful to briefly review the most salient portions of the bill before addressing the issues you have raised. Senate Bill 18 proposes to expand the current drug court programs under the Arkansas Drug Court Act, see A.C.A. §§ 16-98-301 — 304 (Repl. 2006), to address the "critical need for judicial intervention and support for effective treatment programs. . . ." SB 18, § 3 (amending A.C.A. § 16-98-302). Under current law, each judicial district is authorized to establish such a "drug court program." A.C.A. § 16-98-303(a). Senate Bill 18 amends this law to identify "drug court programs" as "specialized court dockets within the existing structure of the Arkansas court system . . . [that] offer judicial monitoring of intensive treatment and strict supervision of addicts in drug and drug-related cases." SB 18, § 3 (amending subsection 16-98-302). The bill specifies a number of "key components" of the programs, including "[i]ntegration of substance abuse treatment with justice system case processing" and "[a]ccess to a continuum of treatment, rehabilitation, and related services[.]"Id. Toward these ends, the programs are to incorporate specified services from the Department of Community Correction ("DCC"), the Department of Health and Human Services ("DHHS"), and the Administrative Office of the Courts ("AOC"). SB 18, § 4 (amending A.C.A. § 16-98-303).
Services to be provided by DCC and DHHS include the provision of supportive positions (probation officers, drug counselors, administrative assistants), as well as drug testing and outpatient and residential treatment for drug court participants.[1] DHHS also certifies and licenses treatment providers and treatment facilities that serve drug court program participants. Id. AOC provides, interalia, "state-level coordination and support for drug court judges and their programs, and it "[a]dministers funds for the maintenance and operation of [the] programs." Id. The AOC is also charged with developing a "statewide evaluation model" and reporting evaluations to the General Assembly by July 1 of each year. SB 18, § 5 (adding subsection 16-98-306(g)(1) to Title 16, Chapter 98, Subchapter 3). The bill creates for these purposes a "Division of Drug Court Programs" within the AOC and the position of "Drug Court Coordinator" within the Division. Id. The Coordinator oversees the disbursement of appropriated funds, provides various support services for the programs, tracks information and data on participants, and *Page 3 
develops guidelines for developing effective programs and evaluating program accountability. Id.
Finally, and of particular relevance to your question, the bill creates the "Drug Court Advisory Committee" to consist of the following members:
 (1) The Chief Justice of the Supreme Court or the Chief Justice's designee who shall serve as chair;
 (2) The Director of the Administrative Office of the Courts or the director's designee;
 (3) A judge to be appointed by the Arkansas Judicial Council;
 (4) The Director of the Department of Community Correction or the director's designee;
 (5) The Director of the Department of Health and Human Services or the director's designee;
 (6) The Director of the Bureau of Alcohol and Drug Abuse Prevention or the director's designee;
 (7) A prosecutor appointed by the Prosecutor Coordinator;
 (8) A public defender appointed by the Executive Director of the Arkansas Public Defender Commission;
 (9) A member of the Senate appointed by the President Pro Tempore of the Senate;
 (10) A member of the House of Representatives appointed by the Speaker of the House of Representatives;
 (11) The Arkansas Drug Director or the Arkansas Drug Director's designee; and
 (12) The Chair of the Board of Corrections or the chair's designee.
SB 18, § 5 (adding subchapter 16-98-307).
The Committee is given authority to "approve rules to implement this subchapter," i.e., subchapter 3 of Chapter 98 of Title 16 (the "Arkansas Drug Court Act," A.C.A. § 16-98-301). Id. The bill states in this regard:
 (i)(1) The committee shall have the authority to approve rules to implement this subchapter, and the Department of Community Correction, the Department of Health and Human Services, and the Administrative Office of the Courts shall promulgate the rules by January 1, 2008. *Page 4 
 (2) The rules described in subdivision (i)(1) of this section shall include at least the following:
 (A) Provisions to identify data to be collected for evaluation;
 (B) Provisions to ensure uniform data collection; and
 (C) A formula for equitable funding of drug court programs among the judicial districts based on the number of drug court participants.
Id.
In my opinion, several provisions of the Arkansas Constitution are implicated by the makeup of this Committee, including Article 5, Section 10, Article 4, Sections 1 and 2 (the "separation of powers doctrine"), Article 19, Section 6, and Amendment 80, Section 16(f).
Article 5, Section 10
The first provision, Ark. Const. art. 5, § 10, provides as follows:
 No Senator or Representative shall, during the term for which he shall have been elected, be appointed or elected to any civil office under this State.
It has been reaffirmed that this provision "was designed and intended as a protection against the possible conflicts of interests a member of the legislature might have as an elected official with the power, influence and authority to create positions and offices, and the interest he might have as a private citizen who would desire to hold such civil office by appointment or election." Harvey v. Ridgeway, 248 Ark. 35, 48,450 S.W.2d 281, 288 (1970). In determining whether a particular position constitutes an "office," the Arkansas Supreme Court has consistently adhered to the view that an office is created by law, with the tenure, compensation, and duties of the position also usually fixed by law.See, e.g., Haynes v. Riales, 226 Ark. 370, 290 S.W.2d 7 (1956);Maddox v. State, 220 Ark. 762, 249 S.W.2d 972 (1952); and Martindale v.Honey, 259 Ark. 416, 533 S.W.2d 198 (1976). Additionally, a public officer ordinarily exercises some part of the *Page 5 
state's sovereign power. Maddox, 220 Ark. at 763; Martindale,259 Ark. at 419. Other typical factors signifying a public office include the taking of an oath of office, the receipt of a formal commission, and the giving of a bond, although the court has consistently maintained that no single factor is ever conclusive. Haynes, supra; Maddox supra.
In a more recent case, State Board of Workforce Education v.King, 336 Ark. 409, 416, 985 S.W.2d 731 (1999), the Arkansas Supreme Court noted:
 Early on, we cited with approval a definition of "civil office" offered by the Iowa Supreme Court: "A civil office is a grant and possession of the sovereign power." Wood v. Miller, 154 Ark. at 322-323, 242 S.W. at 575, citing State v. Spaulding, 72 N.W. 288 (Iowa 1897). Sovereign power is the authority of the State to act. Black's Law Dictionary 1396 (6th ed. 1990). Later, we wrote that a civil office is "an office created by civil law within one of the only three branches of government provided for under the present Constitution of this state." Harvey v. Ridgeway, 248 Ark. at 46, 450 S.W.2d at 287.
The question in King was whether State Senator Nick Wilson's positions on the State Board of Workforce Education and Career Opportunities and the Capitol Arts and Grounds Commission constituted civil offices, contrary to art. 5, § 10. The court noted its previous conclusion inFulkerson v. Refunding Board of Arkansas, 201 Ark. 957, 969-970,147 S.W.2d 980 (1941), that "the General Assembly has the power to name persons to execute the laws it passes. But this power is different from creating a commission and then electing its members to the positions created." 336 Ark. at 417. After reciting the powers and duties of these bodies, the court concluded:
 [T]here is no doubt that a position on the Board of Workforce Education constitutes an exercise of the sovereign power of the State and, thus, a civil office. The board functions on behalf of the sovereign state of Arkansas in overseeing vocational education and administering state funds. The same is true of the Capitol Arts and Grounds Commission. . . . We do not see the commission's function as being merely advisory but rather that of a direct decision-maker.
King, 336 Ark. at 418. *Page 6 
The court clearly viewed the exercise of "sovereign power" as a primary characteristic of a "civil office." My review of this case leads me to conclude that a position on the Drug Court Advisory Committee under SB 18 probably constitutes a civil office. These positions are created by law, the duties are enumerated in the statutes, and the exercise of sovereign authority is evident from the Committee's oversight with respect to the rules that will implement the subchapter. As noted above, the Committee is authorized to approve rules promulgated by DCC, DHHS and AOC that include provisions addressing the identification and collection of data and the funding of the drug court programs among the judicial districts. The Committee's approval authority also extends to the "statewide drug court information system" and the "statewide evaluation model" to be developed by the Drug Court Coordinator. SB 18, §§ 4 (amending § 16-98-303) and 5 (adding subsection16-98-306). The Committee is further vested with authority to approve additional funding for local drug program costs not provided by the DCC or the DHHS. SB 18, § 5 (adding A.C.A. § 16-98-305). And it must approve definitions of terms, including "recidivism," "relapses," and "restarts," used in evaluations and reports of drug court programs.Id. (adding A.C.A. § 16-98-306).
The various areas of responsibility assigned to the Commission belie any view of the Commission's function as "being merely advisory."King, supra. The Committee clearly has a significant role in the development, implementation, and funding of drug court programs. Accordingly, while I recognize that there is no oath of office, commission, or bond, and that the members are uncompensated, I believe a position on the Committee constitutes an exercise of sovereign power of the state and, thus, a civil office within the prohibition of Ark. Const. art. 5, § 10. In my opinion, therefore, the appointment of a member of the Senate and the House of Representatives to the Committee is unconstitutional.
Separation of Powers
The next constitutional provision requiring discussion is the "separation of powers doctrine" embodied at Ark. const. art. 4, §§ 1 and2, which provide, respectively, as follows:
 The powers of the government of the State of Arkansas shall be divided into three distinct departments, each of them to be confided to a separate body of magistracy, to wit: Those which are legislative *Page 7 
to one, those which are executive to another, and those which are judicial to another.
 No person, or collection of persons, being one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted.
The law of Arkansas requires a "strict" application of the doctrine.See Spradlin v. Arkansas Ethics Commission, 314 Ark. 108, 858 S.W.2d 684
(1993), citing Oates v. Rogers, 201 Ark. 335, 144 S.W.2d 457 (1940).See also Spradlin v. Arkansas Ethics Commission: A Hard-Line Approach toSeparation of Powers, 48 Ark. L. Rev. 755 (1995). It has been stated that the doctrine is necessary to preserve the critical system of "checks and balances" built into our form of government. Streett v.Roberts, 258 Ark. 839, 529 S.W.2d 343 (1975) (Byrd, J. concurring). Under the classic division of the powers, the legislature makes the laws and appropriates state revenues, the executive administers the laws and expends the appropriations, and the judiciary interprets the laws.See Chaffin v. Arkansas Game Fish Comm'n, 297 Ark. 431, 757 S.W.2d 950
(1988), Federal Express Corp. v. Skelton, 265 Ark. 187, 578 S.W.2d 1
(1979), and Hooker v. Parkin, 235 Ark. 218, 357 S.W.2d 534 (1962).
The separation of powers doctrine establishes the basic principle that "[t]he legislature may not impose upon the judiciary or the executive the performance of acts or duties not properly belonging to those departments respectively." Oates, supra, 201 Ark. at 341. Nor may the legislature confer judicial or executive powers upon its members. In order to determine whether the makeup of the Committee contravenes the doctrine, it is first necessary to identify those appointees to the Committee whose positions trigger a separation of powers analysis. Applying the above test of a public office, I believe the following can be identified as office holders: the Chief Justice of the Arkansas Supreme Court; the judge, the prosecutor, the public defender if he or she is "the" district public defender, who is appointed after a vote of the district judges to serve a term of two years (see Op. Att'y Gen.2001-127 and statutes cited therein); the members of the legislature; and the Chair of the Board of Corrections.[2] *Page 8 
It must next be determined whether in serving on the Committee, these officers perform any acts or duties not properly belonging to the branch of government in which they serve. This in turn requires discerning whether the Committee is part of the executive or judicial branch. It clearly is not part of the legislative branch. Senate Bill 18 therefore plainly violates separation of powers to the extent it provides for the appointment of a member of the House and the Senate to the Committee. However, the question of the placement of the Commission in either the judicial or executive branch is somewhat more difficult. Because its functions are clearly related to the "administration of justice," (see Spradlin, supra, and generally State v. Diluzio, 121 Wn. App. 822,90 P.3d 1141 (2004) (observing that a drug court judge's active involvement in the drug court program coincides with the judiciary's role under the constitution), one might conclude that the Committee is part of the judiciary. Cf. Op. Att'y Gen. 97-082 (concluding that the non-judicial functions of the Arkansas Judicial Council relating to new judgeships and redistricting did not violate separation of powers, but rather constituted permissible delegable powers and functions "related to `the administration of justice,'" citing Spradlin and Oates,supra).
Upon further review, however, I do not find this reasoning persuasive when considering the Committee's approval authority with respect to rules that are promulgated to implement the Drug Court Act. SB 18, § 5 (adding subchapter 16-98-307), supra. This authority is clearly executive in nature. Although the Arkansas Supreme Court has acknowledged that it is sometimes difficult to classify administrative bodies as executive or legislative in nature, Spradlin, supra, "there can be no doubt that [administrative agencies] are not part of . . . the judicial department." Id., 314 Ark. at 113-114, citing Stafford,Separation of Powers and Arkansas Administrative Agencies:Distinguishing Judicial Power and Legislative Power, 7 UALR L.J. 279, 280-281 (1984). In my opinion, the Commission's role in executing the Drug Court Act, as amended by SB 18, distinguishes the Commission's powers from the authority at issue in Attorney General Opinion 97-082,supra, involving the Arkansas Judicial Council, which was limited to making recommendations upon which the General Assembly might act. Taking into account the nature of the powers exercised by the Committee, therefore, I believe it must be concluded that the Committee is part of the executive branch. Accordingly, it would be a violation of separation of powers, in my opinion, for a member of the judicial branch to serve on the Committee. The *Page 9 
proscription extends to the Chief Justice, judge, prosecutor, and public defender (if "the" public defender, as noted above).
Article 19, Section 6
This constitutional proscription states:
 No person shall hold or perform the duties of more than one office in the same department of the government at the same time, except as expressly directed or permitted by this Constitution.
Ark. Const. art. 19, § 6. The proscription is implicated once it is determined that a position on the Drug Court Advisory Committee constitutes an office, as discussed above. In my opinion, the proscription applies to the Chair of the Board of Corrections. Having identified this position as an office, see above discussion, I believe it necessarily follows that placing this office holder on the Committee contravenes art. 19, § 6.
Amendment 80, Section 16(F)
This provision should also be noted specifically in connection with the appointment of judges to the Committee. It provides:
 Circuit, District, and Appellate Court Judges and Justices shall not be allowed any fees or perquisites of office, nor hold any other office of trust or profit under this state of the United States, except as authorized by law.
Ark. Const. amend. 80, § 16(F).
Effective July 1, 2001, Amendment 80 repealed Ark. Const. art. 7, § 18, which previously prohibited judges from holding "any other office of trust or profit under this State or the United States." Ark. Const. amend. 80, § 22(A) (repealer). The phrase "except as authorized by law" is new language under Amendment 80. It is notable that the word "law," according to its commonly understood meaning, includes statutory law.See, e.g., Bozeman Daily Chron. v. city of Bozeman, 260 Mont. 218, 859
P.2d 435 (1993). See also Grapeland Heights Civic Ass'n v. City ofMiami, 267 So.2d 321 (Fla. 1972) (concluding that the word "law" in the phrase "authorized by law" under the Florida Constitution means an enactment by the *Page 10 
state legislature, and not another political body, such as a city commission). Accordingly, although we do not yet have the benefit of case law construing this provision, it seems that the holding of another office by a circuit, district, or appellate judge or justice might be legislatively authorized pursuant to Amendment 80.
This might at first glance appear to suggest that the legislature could enact a law authorizing a judge to simultaneously hold either another judicial office or an office in another branch of government. In my opinion, however, amend. 80, § 16(F) is not properly interpreted to mean that any such dual service can be in contravention of other constitutional proscriptions. It is generally held that an amendment to the state constitution "fits into that organic body, displacing whatever may be in conflict with or repugnant to the provisions of the amendment[,]" Priest v. Mack, 194 Ark. 788, 109 S.W.2d 665 (1937), and that "[n]o interpretation of a constitutional amendment should be allowed which would conflict with any other provision of the constitution unless it is absolutely necessary to give effect to the amendment." State v. Donaghey, 106 Ark. 56, 152 S.W. 746 (1912). I believe it is clear, based on these precepts, that the proscriptions under art. 19, § 6 and art. 4 (separation of powers) remain effective following the adoption of Amendment 80. Article 19, section 6,supra, is explicit in stating that dual office holding in the same department of government may only occur if "expressly directed or permitted by this Constitution." Article 4, section 2, supra, similarly states that the simultaneous exercise of powers of different branches is only permitted "in the instances hereinafter expressly directed or permitted." In my opinion, amend. 80, § 16(F), does not constitute such express authorization of dual service, and can be given effect without displacing these proscriptions.
Accordingly, having determined that a position on the Committee constitutes an office under the state, I must conclude that Ark. Const. amend. 80 is an additional bar to the service of the Chief Justice, and any circuit, district, or appellate judge or justice, on the Committee. Such service is also precluded by the separation of powers doctrine which, as explained above, also prevents any other member of the judicial branch from serving on this Committee.
In closing, therefore, the makeup of the Committee created under SB 18 in my opinion fails to comport with the Arkansas Constitution. Specifically, the membership is unconstitutional to the extent it includes members of the General *Page 11 
Assembly, judicial branch members, and the Chair of the Arkansas Board of Corrections.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
 DUSTIN McDANIEL Attorney General
[1] DHHS provides these services in delinquency cases, dependency-neglect cases, and family in need of services cases. SB 18, § 4 (amending A.C.A. § 16-98-303).
[2] As noted by my immediate predecessor, there may be some question whether two "offices" must be involved before the separation of powers doctrine is triggered, or whether the proscription attaches to positions of "employment." Op. Att'y Gen. 2003-138. After noting that the question has never been squarely addressed by the Arkansas Supreme Court, and following a discussion of cases from other jurisdictions, my predecessor concluded that there was insufficient basis to depart from the conclusion of a previous opinion of the office that "the separation of powers doctrine is restricted to two `offices.'" Id. I concur with this view, having found no controlling case on the subject. *Page 1