The STATE BOARD of WORKFORCE EDUCATION and Career Opportunities; and The Capitol Arts and Grounds Commission *v.* Miles KING

99-4                                                        985 S.W.2d 731

Supreme Court of Arkansas
Opinion delivered February 18, 1999

*Mark Pryor*, Att'y Gen., by: *Sherri L. Robinson*, Ass't Att'y Gen., for appellants.

*Riable Law Firm*, by: *Mark Riable*, for appellee.

ROBERT L. BROWN, Justice. The State Board of Workforce Education and Career Opportunities (referred to herein as Board of Workforce Education) and the Capitol Arts and Grounds Commission appeal from a summary-

judgment order in favor of appellee Miles King. In their appeal, they assert that the trial court erroneously found that State Senator Nick Wilson's service on both the Board of Workforce Education and the Capitol Arts and Grounds Commission constituted "civil offices" in violation of Article 5, Section 10, of the Arkansas Constitution. We disagree with the appellants' contention and hold that service on the board and commission involved are civil offices and, further, that such service violates the constitutional mandate requiring separation of powers set forth in Article 4 of the Arkansas Constitution.

Senator Nick Wilson currently serves as a member of the Arkansas State Senate and was appointed to serve on several state boards and commissions, which include appellants Board of Workforce Education and the Capitol Arts and Grounds Commission. He also was appointed to serve on the State Commission on Child Support and the Workforce Development Commission, which are not parties to this appeal. On November 10, 1997, appellee, Miles King, filed suit against Senator Wilson and the board and three commissions named above where Senator Wilson was appointed as a member and claimed that those positions on the board and commissions were civil offices and, thus, violative of Article 5, Section 10 of the Arkansas Constitution. King prayed for an injunction to prohibit Senator Wilson from serving on the board and commissions and also sought to recover all expenses paid to Senator Wilson for attending meetings of the board and commissions as illegal exactions. On April 7, 1998, the board and commissions filed a motion for summary judgment. On April 27, 1998, King filed his own motion for summary judgment.

On October 6, 1998, the trial court granted partial summary judgment in favor of each side. The trial court first decided that Senator Wilson's position on the State Commission on Child Support was not a civil office and, therefore, did not run afoul of the constitution. The trial court further found that King's claim about Senator Wilson's position on the Workforce Development Commission was moot because that commission ceased to exist before the motions for summary judgment were filed. The trial court next found that Senator Wilson's positions on the Board of Workforce Education and the Capitol Arts and Grounds Commis-

sion were civil offices and were constitutionally impermissible. The trial court concluded by ruling that King's illegal-exaction claim failed because there was no proof that Senator Wilson acted with fraudulent intent or that he knew he was holding an illegal office. Because of this, the court did not order Senator Wilson to reimburse the *per diem* expenses he received while illegally serving on the one board and one commission. Senator Wilson did not appeal the decision of the trial court, but the Board of Workforce Education and the Capitol Arts and Grounds Commission have appealed. King initially filed a cross-appeal concerning that part of the trial court's order which was adverse to him but moved to dismiss it, which we granted. The appellants moved to expedite consideration of the appeal, which we also granted.

■ As an initial matter, we address King's contention that this matter is moot because Senator Wilson did not appeal. We do not agree. The Board of Workforce Education and Capitol Arts and Grounds Commission have a clear interest in this matter in that they want Senator Wilson to continue his service unimpeded. Were we to reverse the trial court's order with respect to the appellants, Senator Wilson's service would resume, and the appellants would have achieved the desired result. Without question, that result would be far from meaningless and would have a profound practical effect. *See Stilley v. McBride*, 332 Ark. 306, 965 S.W.2d 125 (1998). We conclude that the fact that Senator Wilson did not join in the appeal does not diminish the active and very real interest of the appealing board and commission.

■ The core issue before this court is whether Senator Wilson's positions on the Board of Workforce Education and the Capitol Arts and Grounds Commission constituted appointments to civil offices, contrary to Article 5, Section 10, of the Arkansas Constitution. The trial court found that both appointments were civil offices, and our standard of review is whether its findings were clearly erroneous. *See* Ark. R. Civ. P. 52(a); *Office of Child Support Enforcement v. Troxel*, 326 Ark. 524, 931 S.W.2d 784 (1996). In resolving the question, it becomes important for us to determine, first, what service on the relevant board and commission entailed.

■ The Board of Workforce Education has twenty members, six of whom are members of the Arkansas General Assembly. Ark. Code Ann. § 25-6-302 (Supp. 1997). Those six members serve in an *ex officio*, nonvoting capacity. The board is the successor board to the State Board of Vocational Education, and has general supervision of vocational education, including the administration of state funds. Ark. Code Ann. § 6-11-106 (Repl. 1993). The board develops and monitors a state plan for vocational and technical education and further establishes area vocational centers around the state and, together with the State Board of Education, formulates policy for public education. Ark. Code Ann. § 25-6-303 (Supp. 1997).

■ The Capitol Arts and Grounds Commission, on the other hand, has thirteen members, including one member of the state Senate and one member of the House of Representatives. Ark. Code Ann. § 22-3-502 (Supp. 1997), *as amended by* Act 1043 of 1997. It is chaired by the Secretary of State. *Id.* The legislative members are *ex officio* and nonvoting members, and they receive *per diem* payments and mileage reimbursement for attending commission meetings, both of which are paid by legislative appropriations. *Id.* The duties of the commission include collecting information from state agencies on need for space on the State Capitol grounds; recommending a Capitol Master Plan for capital improvement projects on the grounds; recommending acquisition of land for those purposes; filing an annual report with the Secretary of State; reviewing and recommending to the Secretary of State monuments, memorials, and fountains on the grounds; reviewing paintings and murals in the State Capitol; and accepting donations in funds or property for the Capitol Building and the expenditure of those funds. Ark. Code Ann. § 22-3-503 (Supp. 1997). Monuments on the State Capitol grounds must be authorized by the General Assembly. *Id.*

■ The question before us is whether the duties required of Senator Wilson on either the appealing board or commission are such that his position falls into the category of a "civil office." The precise language of Article 5, Section 10, reads: "No Senator or Representative shall, during the term for which he shall have

been elected, be appointed or elected to any civil office under this State." Ark. Const. art. 5, § 10.

We have had occasion over the years to interpret this constitutional provision as applied to certain official positions occupied by state senators or representatives apart from their duties as members of the General Assembly. *See, e.g., Martindale v. Honey,* 259 Ark. 416, 533 S.W.2d 198 (1976) (deputy prosecuting attorney); *Harvey v. Ridgeway,* 248 Ark. 35, 450 S.W.2d 281 (1970) (delegate to the Constitutional Convention); *Starnes v. Sadler,* 237 Ark. 325, 372 S.W.2d 585 (1963) (member of State Board of Pardons and Paroles and Board of Southern State College); *Jones v. Duckett,* 234 Ark. 990, 356 S.W.2d 5 (1962) (County Election Commissioner); *Smith v. Faubus,* 230 Ark. 831, 327 S.W.2d 562 (1959) (member of State Sovereignty Commission); *Fulkerson v. Refunding Bd. of Arkansas,* 201 Ark. 957, 147 S.W.2d 980 (1941) (member of Refunding Board); *Wood v. Miller,* 154 Ark. 318, 242 S.W. 573 (1922) (municipal judge). In each case, except for the election to the Constitutional Convention, the position was deemed to be a civil office. Early on, we cited with approval a definition of "civil office" offered by the Iowa Supreme Court: "A civil office is a grant and possession of the sovereign power." *Wood v. Miller,* 154 Ark. at 322-323, 242 S.W. at 575, *citing State v. Spaulding,* 72 N.W. 288 (Iowa 1897). Sovereign power is the authority of the State to act. BLACK'S LAW DICTIONARY 1396 (6th ed. 1990). Later, we wrote that a civil office is "an office created by civil law within one of the only three branches of government provided for under the present Constitution of this state." *Harvey v. Ridgeway,* 248 Ark. at 46, 450 S.W.2d at 287. We added in *Harvey* that Article 5, Section 10, "was designed and intended as a protection against the possible conflicts in interests a member of the legislature might have as an elected official with the power, influence and authority to create positions and offices, and the interest he might have as a private citizen who would desire to hold such civil office by appointment or election." 248 Ark. at 48, 450 S.W.2d at 288.

This court has held over the years that a variety of official positions occupied by members of the General Assembly did not pass constitutional muster. In *Fulkerson v. Refunding Board of*

*Arkansas, supra,* for example, we considered Act 4 of 1941 which provided that three senators and five representatives be appointed as members of the Refunding Board. The board was established to enable the State to refund its bonded road debt. We held in that case that the senators and representatives were not eligible to serve as members of the board and said:

> Now, of course the General Assembly has the right to appoint such committees or commissions, to be composed, in part or wholly, of its own members, to make investigation and report upon any matter related to the discharge of their legislative duties. But the discharge and performance of the details of act No. 4 is not a legislative matter. It was the sole province of the General Assembly to enact the law. It is the duty of the judicial department to construe it, and it will be the duty of the executive department to enforce it; and we think it is beyond the power of the General Assembly to confer executive powers upon its members, and we think the appointment of members of the General Assembly to membership on the Refunding Board is in contravention of the spirit, if not the letter, of the sections of the Constitution above referred to.

*Fulkerson,* 201 Ark. at 969, 147 S.W.2d at 986. We concluded in *Fulkerson* by stating that the General Assembly has power to name persons to execute the laws it passes. But this power is different from creating a commission and then electing its members to the positions created. *Id.* at 969-970, 147 S.W.2d at 986.

This court has further held that service by legislators on either the State Board of Pardons and Paroles or the Board of Southern State College violated the constitutional proscription. *See Starnes v. Sadler, supra.* In *Starnes,* we also observed that Article 4, Sections 1 & 2, provide that the powers of government are divided into three district departments, and no person serving within the legislative, executive, or judicial departments may exercise power belonging to one of the other departments. We then determined that the legislators' service on the boards in question violated the principle of separation of powers because "they are empowered to manage, control and supervise a considerable amount of state property, assets and funds . . . ." *Starnes,* 237 Ark. at 330, 372 S.W.2d at 588. Under the Arkansas Constitution, that power is reserved to the executive branch of state government.

Finally, in *Smith v. Faubus, supra,* we weighed the issue of whether members of the legislative branch could sit on the State Sovereignty Commission. We held that the Governor, Lieutenant Governor, and the Attorney General could serve on the commission because Article 5, Section 10, did not apply to officers of the executive branch but that members of the General Assembly, even though they were appointed in an *ex officio* role, were prohibited under our Constitution from serving on that commission.

■ ■    Using this line of cases as a backdrop, there is no doubt that a position on the Board of Workforce Education constitutes an exercise of the sovereign power of the State and, thus, a civil office. The board functions on behalf of the sovereign state of Arkansas in overseeing vocational education and administering state funds. The same is true of the Capitol Arts and Grounds Commission. It develops a Master Plan for the needs of the State Capitol and its grounds and reviews proposals and makes recommendations, some of which go to its chair who is a constitutional officer of the Executive Branch — the Secretary of State. What is decisive on this point is that the commission is further authorized to raise private donations, enter into contracts, and spend money on monuments, fountains, artwork and the like. We do not see the commission's function as being merely advisory but rather that of a direct decision-maker with enormous influence over the physical plant of the Capitol Building and its grounds as well as future expansion. We agree with the trial court that this, too, constitutes a civil office.

■    Despite our line of cases, the Board of Workforce Education and the Capitol Arts and Grounds Commission urge that Senator Wilson cannot be deemed to hold a civil office because he serves only as an *ex officio* and nonvoting member. As already mentioned, we held in *Smith v. Faubus, supra,* that *ex officio* status did not cure the illegality of a legislative appointment to a civil office. The same can be said about nonvoting status.

■    It is this last point that directly implicates the doctrine of separation of powers in our judgment. As already mentioned, the principle that a member of one branch of government shall not serve in another is fixed in no uncertain terms by the Arkansas

Constitution: "No person, or collection of persons, being one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted." Ark. Const. art 4, § 2. The legislator, in this case Senator Wilson, has been authorized by the General Assembly to occupy a position on the appealing board and commission. Hence, he serves with the imprimatur of the General Assembly which enacted the enabling legislation. With the full weight of this legislative authority behind him, he participates in debate, voices his opinions, and assesses the pros and cons of any given issue with the other members of the board and commission. His views are made known, and carry, no doubt, inordinate influence because of who and what he is. Under these circumstances, it makes little difference whether he actually votes on the issue at hand. He is unmistakably exercising the power of the executive branch of government by his participation on the board and commission, and that is forbidden to him as a member of the General Assembly.

We have previously addressed the subtle yet palpable impact that intrusion by the legislative branch into the affairs of a state agency can have. *See Chaffin v. Arkansas Game & Fish Comm'n,* 296 Ark. 431, 757 S.W.2d 950 (1988). In *Chaffin,* the General Assembly had passed an act giving the Legislative Council the power to review and advise on all professional or consultant contracts in amounts of more than $5,000 before a state agency could enter into the contract. The history of the act showed that no contracts had been approved when the Legislative Council had voiced its disapproval, even though the act was couched in terms of the Council's merely giving its advice on the contracts. We noted in our opinion that it was unreasonable to expect that a state agency would defy the will of an arm of the General Assembly which had the power to undermine its very existence. We viewed the legislative act giving the Legislative Council this power as an encroachment and remarked specifically that a "subtle coercion exercised by a powerful branch of government can effectively tie the hands of a coordinate branch." *Chaffin,* 296 Ark. at 444, 757 S.W.2d at 957.

■ The appellants make much of the fact that Senator Wilson is merely performing legislative duties when serving on the Board of Workforce Education and the Capitol Arts and Grounds Commission, which is clearly permitted in *Fulkerson v. Refunding Board of Arkansas, supra.* We disagree. In *Fulkerson* we did endorse in *dicta* the ability of the General Assembly to appoint its members to a committee or commission to investigate and report on a matter related to their *legislative* duties. This, however, was not a grant of blanket authority to serve on all boards and commissions of the executive branch that execute and implement laws passed by the General Assembly. That would make a travesty of the doctrine of separation of powers. We made that distinction clear in our *Fulkerson* decision but have stated emphatically since then that the separation-of-powers provisions in Article 4 of the Arkansas Constitution establish that the legislative power is to make laws but not enforce them. *See, e.g., Clinton v. Clinton,* 305 Ark. 585, 810 S.W.2d 923 (1991), *quoting Springer v. Philippine Islands,* 277 U.S. 189 (1928). In short, the execution of our state laws is simply beyond the ken of legislative power, and our State Constitution makes this abundantly clear.

■ The appellants, finally, contend that having Senator Wilson serve on their respective board and commission provides them with expertise and an information resource that otherwise would be lacking. This might be true but that same resource could be tapped by Senator Wilson's attendance at the meetings as a member of the public and not as a member of the General Assembly serving on that board and commission. It is the fact that he fills both positions while simultaneously serving as a member of the state Senate that violates both Articles 4 and 5 of the Arkansas Constitution.

In sum, the trial court was not clearly erroneous. We affirm the summary-judgment order as it pertains to the Board of Workforce Education and the Capitol Arts and Grounds Commission.

Affirmed.

GLAZE, J., concurs.

CORBIN and THORNTON, JJ., dissent.

TOM GLAZE, Justice, concurring. I agree with the majority opinion, but write to point out that the dissent totally misses the issue when it expresses the view that General Assembly members can serve on legislative-created boards that have nothing to do with the *discharge of legislative duties*. This court prohibited such an unconstitutional practice in *Fulkerson v. Refunding Board of Arkansas*, 201 Ark. 957, 147 S.W.2d 980 (1941). That constitutional concept was, is, and remains the law and cannot be avoided by saying that General Assembly members can serve on such boards or commissions when a member's service "would benefit the legislature." This is the very conflict the separation-of-powers doctrine is to guard against.

Here, the boards and commissions are laden with persons from the executive branch, and these members are empowered to discharge executive duties. These boards and commissions are not created for the purpose of discharging legislative duties. Pure and simple, it is the General Assembly member's appointment as a member of the commissions and boards that is unconstitutional, and that unlawful appointment cannot be legitimized by placing a General Assembly member on the board or commission without giving him or her voting powers.

In conclusion, while this court was not presented with whether a General Assembly member could constitutionally serve on the other two commissions — the State Commission on Child Support and the Workforce Development Commission — that were in issue below, I see those positions no differently than the ones decided in this appeal. In short, the General Assembly members' appointments to those two commissions violated the separation-of-powers doctrine, and in my view were unconstitutional.

DONALD L. CORBIN, Justice, dissenting. I would reverse because I do not agree that Senator Wilson's appointments to either the Board of Workforce Education, or the Capitol Arts and Grounds Commission, constitute civil-office violations of

Ark. Const. art. 5, § 10. I also disagree that Senator Wilson's service rises to the level of a violation of separation of powers pursuant to Ark. Const. art. 4.

Clearly, Senator Wilson did not acquire sovereign powers by virtue of his appointment. Lacking voting power, Senator Wilson was totally powerless to participate meaningfully or to interfere with the major activities of these boards. In sum, he had no authority to act for the State; hence, he assumed no sovereign powers, which define civil offices. *Wood v. Miller*, 154 Ark. 318, 242 S.W. 573 (1992). Essentially, Senator Wilson was an observer and operated, at best, as a liaison between the legislative and executive branches. Had he had actual voting powers, I would agree with the majority that Senator Wilson should not serve as a "direct decision-maker with enormous influence[.]" While the majority makes much of Senator Wilson's opportunity to express his opinion, it has conspicuously omitted any authority for bootstrapping the senator's nonvoting status with our holding in *Smith v. Faubus*, 230 Ark. 831, 327 S.W.2d 562 (1959). I would hold that such nonvoting status effectively cured Senator Wilson's appointment. Moreover, as a liaison between governmental branches, Senator Wilson's representation and observation was of benefit to the legislature and directly linked to his legislative responsibilities. *Fulkerson v. Refunding Board of Arkansas*, 201 Ark. 957, 147 S.W.2d 980 (1941).

Because the facts in this case reveal no hint of intrusion, coercion, or usurpation of power between the respective governmental branches, I respectfully dissent.

THORNTON, J., joins in this dissent.