The Honorable Jonathan S. Fitch State Senator R.R. 1 Box 31 Hindsville, AR 72738-9701
Dear Senator Fitch:
This is in response to your request for an opinion on the following questions, which you have asked with reference to Article 5, Section 10
of the Arkansas Constitution:
 1. Did State Representative Ted Thomas have the authority to resign from the House of Representatives and take a position of employment in the Governor's office?
 2. Did State Senator Jim Scott have the authority to resign from the Senate and take the position as Director of the Bureau of Standards?
RESPONSE
It is my opinion, with regard to your first question, that Article 5, Section 10 of the Arkansas Constitution is inapplicable because Representative Thomas' position on the Governor's staff does not constitute a "civil office" within the meaning of that constitutional proscription.[1] In my opinion, the answer to your second question is in all likelihood "no" because the position of Director of the Arkansas Bureau of Standards was created as a "civil office" under state law.
Question 1 — Did State Representative Ted Thomas have the authority toresign from the House of Representatives and take a position ofemployment in the Governor's office?
The central issue under Ark. Const. art. 5, § 10 is whether the position held by former Representative Thomas in the Governor's office constitutes a "civil office under this state." Article 5, Section 10 provides:
 No Senator or Representative shall, during the term for which he shall have been elected, be appointed or elected to any civil office under this State.
According to the Arkansas Supreme Court, this constitutional provision was adopted because "[i]t was thought to be contrary to both the spirit and the letter of the Constitution for the General Assembly to create an office or board or other state agency, and then to fill the place thus created with one or more of its own members." Fulkerson v. RefundingBoard of Arkansas, 201 Ark. 957, 969, 147 S.W.2d 980 (1941). This reasoning was recently confirmed in State Board of Workforce Educationv. King, 336 Ark. 409, 985 S.W.2d 731 (1999), wherein the court quoted the following from a previous case:
 [Ark. Const. art. 5, § 10] was designed and intended as a protection against the possible conflicts in interests a member of the legislature might have as an elected official with the power, influence and authority to create positions and offices, and the interest he might have as a private citizen who would desire to hold such civil office by appointment or election.
336 Ark. at 416, quoting Harvey v. Ridgeway, 248 Ark. 35, 46,450 S.W.2d 281 (1970).
The relevant principles under art. 5, § 10 must be applied to each case as it arises. See Lucas v. Futrall, 84 Ark. 540 (1907). Although, as noted by the court in Lucas, id. at 547, there are no hard and fast rules to employ, the general controlling principles are well established. InWood v. Miller, 154 Ark. 318 (1922), where the court held that a state representative was prohibited by Article 5, § 10 from serving as municipal judge, the court analyzed the issue in two parts: (1) whether the position is a civil office; and (2) whether the position is one "under this State." The court recently defined the term "civil office" inState Board of Workforce Education v. King, supra:
 Early on, we cited with approval a definition of `civil office' offered by the Iowa Supreme Court: `A civil office is a grant and possession of the sovereign power.' Wood v. Miller, 154 Ark. at 322-323, 242 S.W. at 575, citing State v. Spaulding, 72 N.W. 288 (Iowa 1897). Sovereign power is the authority of the State to act. Black's Law Dictionary 1396 (6th ed. 1990). Later, we wrote that a civil office is `an office created by civil law within one of the only three branches of government provided for under the present Constitution of this state.' Harvey v. Ridgeway, 248 Ark. at 46, 450 S.W.2d at 287.
336 Ark. at 416.
The court in Lucas, supra, had earlier described the controlling principles by stating that a "civil office" is an office in which "a duty [is] a continuing one, which is defined by rules prescribed by the government, and not by contract, which an individual is appointed by government to perform, who enters on the duties appertaining to his station, without any contract defining them, if those duties continue, though the person be changed. . . ." 845 Ark. at 547. The court then proceeded to quote other sources that had similarly described the nature of a civil office. Among the characteristics noted by these other sources as indicating a civil office were: (1) The tenure, compensation and duties of the position are fixed by statute; (2) The duties of the position are of a public nature; and (3) The duties of the position are not affected by a change in the person of the incumbent.
As for whether the position is one "under this State," the court has stated:
 The words "under this State," as used in the Constitution, mean under the laws of this State or by virtue of or in conformity with the authority conferred by the State as sovereign. It embraces all offices created by the laws of the State as contradistinguished from other authority.
Wood v. Miller, supra, 154 Ark. at 323.
Applying the above principles, I conclude that the position held by former Representative Thomas in the Governor's office does not fall within the art. 5, § 10 prohibition. Please note in this regard that I have enclosed a copy of Attorney General Opinion 96-241, wherein my predecessor in office concluded that a State Representative who resigns prior to employment, but whose term has not expired, may lawfully be employed as a member of the Governor's staff. I agree with the conclusion therein that such employment would not be contrary to art. 5, § 10. As with the staff position at issue in Opinion 96-241, there is no indication in this instance that the position of "Budget Director" held by Representative Thomas was created as a "civil office" pursuant to state law or with the imprimatur of the state. The terms of employment, duties, and salary attendant to the position are, according to my understanding, set by the Governor. There is no oath, bond, or commission of office. Additionally, as Budget Director, he exercises no part of the State's sovereign power apart from the Governor himself. These factors all support the conclusion that this is a position of "employment" rather than an "office." See
Opinion 96-241 at 1, quoting Op. Att'y Gen. 94-031.
It is therefore my opinion that Representative Thomas' resignation and his acceptance of a position of employment in the Governor's office during his term of office as State Representative was not contrary to Ark. Const. art. 5, § 10.
Question 2 — Did State Senator Jim Scott have the authority to resignfrom the Senate and take the position as Director of the Bureau ofStandards?
It is my opinion that the answer to this question is likely "no." As I have previously opined, the resignation of a member of the General Assembly does not remove ineligibility arising under art. 5, § 10. Op. Att'y Gen. 99-396. See also Op. Att'y Gen. 96-245. As with your first question, therefore, the central issue is whether the position of Director of the Arkansas Bureau of Standards constitutes a "civil office under this state."
A review of the legislation pertaining to this position compels me to conclude that the answer to this question is likely "yes." More specifically, the position is created by state law. See A.C.A. §§ 4-18-202, -205, and -208 (Repl. 1991) (part of the Weights and Measures Act of 1963). The law specifies that the Director shall receive such salary as shall be appropriated by the General Assembly. A.C.A. § 4-18-209(d). The powers and duties are fixed by statute, are of a public nature, and are not affected by a change in the person of the incumbent. A.C.A. § 4-18-204(b) through -224. It is clear, moreover, from a review of these latter provisions, that the Director possesses sovereign power.See, e.g., A.C.A. §§ 4-18-204(b) (mandating that the Director shall enforce the provisions of A.C.A. §§ 4-18-201 to -220 and 4-18-222 to -230), 4-18-208 (vesting the Director with police powers), and 4-18-218 to -224 (regarding investigations, inspections, and testing). The Director also separately administers the Arkansas Catfish Marketing Act of 1975. See A.C.A. § 20-61-204.
These factors, according to the above defining principles, support the conclusion that the position of Director of the Bureau of Standards is a "civil office." It is thus my opinion that Senator Scott did not have the authority to resign from the State Senate during his term and accept that office.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:EAW/cyh
Enclosure
[1] Although you have not mentioned Act 34 of 1999 (A.C.A. §§ 21-1-401
to -408 (Supp. 1999), reference should be made to this legislation, which imposes certain restrictions and procedures regarding, inter alia,
constitutional officers becoming employees of the state. Employment during the term of office is prohibited unless the officer resigns prior to entering into the employment. A.C.A. § 21-1-402(a)(1). Representative Thomas' resignation thus complies with this provision. Section21-1-402(e) should also be noted, wherein it provides:
 Former members of the General Assembly and their spouses shall not be eligible to be employed by any state agency within twenty-four (24) months after the legislator leaves office in any job or position which:
 (1) Was newly created by legislative action within the twenty-four (24) months prior to the legislator's leaving office; or
 (2) Had a maximum salary level increase of more than fifteen percent (15%) authorized by legislative action within the twenty-four (24) months prior to the legislator's leaving office.
I lack sufficient information to assess the applicability of § 21-1-402
(e); and in any event this may require factual determinations falling outside the ordinary scope of an opinion from this office.