The Honorable Bill Williams Chairman, Benton County Board of Election Commissioners
105 SE Executive Drive, Suite 1 Bentonville, Arkansas 72712-1481
Dear Mr. Williams:
This is my opinion on your questions about a county board of election commissioners ("Board"), its members ("Commissioners"), and the person elected Board chair ("Chair"). I have rephrased your questions:
 1. May a county party committee remove a Commissioner it appointed?
 2. If so, how?
 3. If no state statute or county ordinance applies and a Board has not adopted its own procedural rules, do Robert's Rules of Order govern the Board's proceedings?
 4. If so, may a Board adopt procedural rules superseding Robert's Rules of Order?
 5. How should disputes among Commissioners over the interpretation or application of Robert's Rules of Order be resolved?
 6. May two Commissioners, neither of whom is Chair, call a Board meeting?
 7. If so, must the two Commissioners notify the Chair?
 8. If the answer to question 6 is yes, who should preside at the meeting? *Page 2 
 9. If the answer to question 6 is yes, how may the two Commissioners discuss calling a meeting without violating the Freedom of Information Act?
 10. What is the Chair's term of office?
 11. Once elected, may the Chair be removed by the other Commissioners?
 12. If so, how?
 13. Is election of the Chair a personnel matter that may lawfully be considered in executive session under the Freedom of Information Act?
RESPONSE In my opinion:
 -the answer to your first, sixth, and eleventh questions is "no";
 -the answer to your fourth and thirteenth questions is "yes";
 -the answer to your tenth question is "two years"; and
 -your second, seventh, eighth, ninth, and twelfth questions are not answered because a stated condition of the questions is not met.
Regarding your third question, it is my opinion that general parliamentary law such as Robert's Rules of Order governs a Board's proceedings where it has not adopted procedural rules and no legislative rules are applicable. Regarding your fifth question, it is my opinion that questions about the resolution of particular disputes over procedure should be addressed from time to time to local counsel, who will be more familiar with the Board's procedural rules and the attendant facts, but disputes generally are resolved by majority vote. *Page 3 
This opinion is based on law in effect on its date and will not be updated to reflect changes in law. I note, however, that the answers to your first and second questions will be different onceAct 1056 of 2011 becomes effective. The Act will amend A.C.A. § 7-4-102 to provide that "a county [party] committee may remove a [Commissioner it appointed] by majority vote of the county committee." Act 1056 of 2011, § 1.
Question 1 — May a county party committee remove aCommissioner it appointed?
As your question implies, a county party committee is responsible for selecting Commissioners in certain instances. A.C.A. § 7-4-102(a)(1), (2), (3) (Repl. 2007).
A public officer who serves a fixed term of office may not be removed by the appointing authority unless a removal power is established by statute. Beasley v. Parnell,177 Ark. 912, 9 S.W.2d 10 (1928), and Warren v. McRae,165 Ark. 436, 264 S.W. 940 (1924) (citing Bruce v. Matlock,86 Ark. 555, 111 S.W. 990 (1908); Lucas v. Futrall,84 Ark. 540, 106 S.W. 667 (1907); and Patton v. Vaughan,39 Ark. 211, 1882 WL 1564 (1882)); accord Op. Att'y Gen. 95-350.
Commissioners are public officers. Warren, supra, andRockefeller v. Purcell,245 Ark. 522, 434 S.W.2d 65 (1968) (Fogleman, J., dissenting);accord Op. Att'y Gen. 98-051, 95-350.
Commissioners' terms are fixed at three years. A.C.A. § 7-4-102(e)(1).
Relevant law provides for filling Board vacancies (A.C.A. § 7-4-103 (Repl. 2007)), but does not provide for removal.See generally Act 465 of 1969, Art. 5 (codified in relevant part, as amended, at A.C.A. §§ 7-4-102 to-105,-107,-109,-111 (Repl. 2007));accord Warren, supra, and Op. Att'y Gen. 95-350.
In my opinion, it clearly follows that a county party committee may not remove a Commissioner it selected. *Page 4 
Question 2 — If so, how?
Because it is my opinion that a county party committee may not remove a Commissioner, this question is not applicable.
Question 3 — If no state statute or countyordinance[1] applies and a Board has not adopted its ownprocedural rules, do Robert's Rules of Order govern the Board'sproceedings? It is generally stated that "[d]eliberative bodies have the right to adopt rules of procedure." 67A C.J.S. Parliamentary Law § 2. Such rules, however, must be exercised in conformity with existing laws. Id. In the absence of rules prescribed by statute or adopted by the governing body, the general parliamentary law prevails. See, e.g., Op. Att'y Gen. 2006-034 ("in the absence of statutory guidance or local procedural rules, standard rules of parliamentary procedure will apply, such as Robert[']s Rules of Order"). See also, Op. Att'y Gen. 2004-326, citing Op. Att'y Gen 98-282; Op. Att'y Gen 95-152 (citing 62 C.J.S. Municipal Corporations § 400(a) (1949)); and 62 C.J.S. Municipal Corporations § 232(a) (Supp. 2004).
Op. Att'y Gen. 2006-137.
I see no valid reason to distinguish between a Board[2] and a county port authority, to which the quoted discussion applied. Thus it is my opinion that, absent applicable legislative or self-imposed procedural rules, standard rules of parliamentary procedure, such as Robert's Rules of Order, govern a Board's proceedings. *Page 5 
Question 4 — If so, may a Board adoptprocedural rules superseding Robert's Rules of Order?
As stated in the quotation above, deliberative bodies generally have authority to adopt their own procedural rules. AccordYandell v. Havana Bd. of Educ.,266 Ark. 434, 439, 585 S.W.2d 927 (1979) ("A deliberative body . . . is entitled to adopt its own rules of internal procedure. . . ."). I know of no law requiring self-imposed procedural rules to be consistent with Robert's Rules of Order. It is therefore my opinion that, subject to applicable legislative rules, a Board may adopt its own procedural rules that need not be consistent with Robert's Rules of Order.
Question 5 — How should disputes among Commissioners over theinterpretation or application of Robert's Rules of Order beresolved?
Questions about resolving particular disputes over the meaning and application of procedural rules are more properly addressed to local counsel as they arise. Local counsel will be familiar with the rules governing a particular Board's proceedings and therefore better positioned to advise the Board, taking into account each situation's unique facts.
That said, "the concurring votes of any two (2) [Commissioners] shall decide questions before [the Board] unless otherwise provided by law." A.C.A. 7-4-105(b). The statute makes no express distinction between substantive and procedural questions. It is my opinion, therefore, that disputes over procedure generally are to be resolved by majority vote of the Board unless applicable law provides for some other method of resolution in the circumstances.
Question 6 — May two Commissioners, neither of whom is Chair,call a Board meeting?
A statute provides that "[t]he chair of a county board of election commissioners shall notify all commissioners of all meetings." A.C.A. § 7-4-105(b) (emphasis added). "All" means "[t]he entire number of; . . . without exception." NEW SHORTER OXFORD ENGLISH DICTIONARY 52 (Lesley Brown ed., 1993). Arkansas courts construe unambiguous statutes according to the plain meanings of the *Page 6 
words used, and give meaning and effect to each word. E.g.,Brown v. Kelton, 2011 Ark. 93, ___ S.W.3d ___, 2011 WL 729057.
The Chair obviously cannot notify other Commissioners of meetings of which he or she is unaware. By its words' plain meanings, the statute purports to apply to each and every meeting, without exception. But it could not apply to every meeting if anyone other than the Chair could call meetings.
Another statute provides that a majority of the State Board of Election Commissioners may cause a meeting to be called. A.C.A. § 7-4-101(e)(1) (Supp. 2009). This statute demonstrates the General Assembly's ability to provide in clear and unequivocal terms, when it desires to do so, that members of similar bodies may call meetings. It has not done so with respect to the Boards at issue here.
House Bill 2155 of 2011 would have amended A.C.A. § 7-4-105 to provide expressly that the two Commissioners, neither of whom is the Chair, could call meetings. House Bill of 2011, § 1. The bill was not enacted.
In my opinion, A.C.A. § 7-4-105(b) establishes by implication a rule that only the Chair may call a Board meeting.
Question 7 — If so, must the two Commissioners notify theChair?
Because it is my opinion that only the Chair may call a Board meeting, this question is not applicable.
Question 8 — If the answer to question 6 is yes, who shouldpreside at the meeting?
Because it is my opinion that only the Chair may call a Board meeting, this question is not applicable.
Question 9 — If the answer to question 6 is yes, how may thetwo Commissioners discuss calling a meeting without violating theFreedom of Information Act? *Page 7 
Because it is my opinion that only the Chair may call a Board meeting, this question is not applicable.
Question 10 — What is the Chair's term of office?
The governing statute provides that one Commissioner will be elected Chair at an organizational meeting held "at least thirty (30) days prior to the general election. . . ." A.C.A. § 7-4-105(a). It is my view, accordingly, that the Chair's term begins upon election at the organizational meeting and ends when the Chair is reelected, or a successor is elected, at the following organizational meeting.
The statute provides that such an organizational meeting is held before each general election. The term "[g]eneral . . . election[s]" is defined for purposes of Title 7 (Elections) of the Arkansas Code as "the regular biennial or annual[3] elections for election of United States, state, district, county, township, and municipal officials. . . ." A.C.A. § 7-1-101(14) (Supp. 2009). School elections are excluded from the definition. Id.
At a time when a statute did not expressly specify the length of Commissioners' terms, but provided that appointments were to be made biennially, the Supreme Court of Arkansas held that Commissioners' terms were two years. Warren, supra.
Because the applicable statutes provide, in effect and in accordance with Warren's reasoning, for a two-year term, it is my opinion that the Chair's term is two years.[4] *Page 8 
Question 11 — Once elected, may the Chair be removed by theother Commissioners?
I take this question to be concerned with whether the Chair may be removed from his or her position as Chair without also removing the person from his or her office as Commissioner. In other words, I understand your question to take for granted that the (former) Chair would continue as a Commissioner following his or her removal from the Chair. I also take your question to be concerned with the possibility of the Chair's removal by the other Commissioners, and I have rephrased your question accordingly. I do not, therefore, address whether or how the Chair may be removed otherwise.
In my view, an analysis similar to that described in my answer to your first question applies here. Recall that a public officer with a fixed term may not be removed by the appointing authority unless a removal power is established by statute.
As discussed in my answer to your tenth question, it is my opinion that the Chair's term is fixed at two years. And the statutes provide no procedure to remove the Chair.
The only remaining question in the analysis, then, is whether the Chair holds a public office, separate from the office he or she holds as Commissioner. The Supreme Court of Arkansas has discussed the broad issue several times:
 [T]he governing principles [for determining whether a person holds a public office, as opposed to public employment,] are well established. A public officer ordinarily exercises some part of the State's sovereign power. His tenure of office, his compensation, and his duties are usually fixed by law. The taking of an oath of office, the receipt of a formal *Page 9 
commission, and the giving of a bond all indicate that a public office is involved, although no single factor is ever conclusive.
Maddox v. State, 220 Ark. 762, 763-764, 249 S.W.2d 972 (1952).
 Briefly stated, a position is a public office when it is created by law, with duties cast on the incumbent which involve some portion of the sovereign power and in the performance of which the public is concerned, and which also are continuing in their nature and not occasional or intermittent. . . .
Bean v. Humphrey, State Auditor,223 Ark. 118, 124, 264 S.W.2d 607 (1954) (quoting 42 Am. Jur. 888).
 A Constitutional delegate [alleged to be a public officer] must be either an officer or an employee. An employee holds his position by reason of a contractual relationship. A public officer exercises some of the State's sovereign power, has statutory duties rather than contractual ones, and receives his position by appointment or election.
Harvey v. Ridgeway,248 Ark. 35, 50, 450 S.W.2d 281 (1970) (Wootton, S.J., dissenting; opinion joined by Harris, C.J., and G.R. Smith, J.).
In a newer case, "[t]he court clearly viewed the exercise of `sovereign power' as a primary characteristic of a `civil office.'" Op. Att'y Gen. 2007-045 (quoting State Bd. of WorkforceEduc. v. King, 336 Ark. 409, 985 S.W.2d 731 (1999)). The court inKing also suggested that an officer's duties are those of a "direct decision-maker," not "merely advisory." King,336 Ark. at 418.
Here, the position is created by law and, as discussed in my answer to your tenth question, has a term of office fixed by law. The Chair is elected by the Commissioners, not engaged under a contract. The law, not a contract, expressly establishes one duty of the position (i.e., to give notice of all meetings, discussed in my answer to your sixth question). In my view, the law also establishes — by implication arising from the position's name — a duty to preside at Board meetings. The public is obviously concerned with the Chair's performance of his or her duties: a Board whose Chair is ineffective or negligent probably would be unable *Page 10 
to consistently conduct elections in a fair, efficient, and economical manner. Likewise I believe the Chair's duties, like those of the other Commissioners, are continuing, not occasional or intermittent, in the sense that most elections occur on a regular schedule and likely require effort and attention on a substantially continuing basis. And it is clear that the Chair exercises decision-making authority, at the very least in determining when Board meetings will be held.
To the best of my knowledge, on the other hand, the Chair, as such, does not take a separate oath, receive a separate formal commission, or post a bond.
The Chair receives no compensation other than that received by all Commissioners under A.C.A. § 7-4-111(b), but the absence of separate compensation does not, in my view, suggest that the incumbent is not an officer, as would the receipt of separate compensation under contract.
It may not appear from the statutes that the Chair, strictly in his or her role as Chair, possesses or exercises the state's sovereign power to any significant extent. One might argue that the Board itself exercises substantially all the sovereign power delegated. But another view is that a Chair is an indispensable component of the body to which the legislature clearly has delegated parts of its sovereign power: without a leader's guidance and moderation, it might well be impossible for a body consisting of three people, particularly three people belonging to two opposing political parties, to function effectively, or at all.
If Special Justice Wootton, in the language from his dissent inHarvey quoted above, was correct in stating that a person holding a public position must be either an officer or an employee, the conclusion that the Chair is a public official is almost compelled. In my view, the Chair could not be deemed an employee under any reasonable interpretation of the word.
But even if that is not the rule, the position's characteristics discussed above lead me to conclude that a court would hold the position of Chair to be a (separate) public office for purposes of the rule protecting public officers from removal by the appointing authority. *Page 11 
Because the Chair is a public officer serving a fixed term, and there is no statutory provision for removal, it is my opinion that the Commissioners may not remove the Chair from office.
Question 12 — If so, how?
Because it is my opinion that the Commissioners may not remove the Chair from office, this question is not applicable.
Question 13 — Is election of the Chair a personnel matterthat may lawfully be considered in executive session under theFreedom of Information Act?
Boards are expressly subject to the open meetings provisions of the Freedom of Information Act ("FOIA"). A.C.A. § 7-4-105(b).[5] The FOIA provides in relevant part that "[e]xecutive sessions will be permitted only for the purpose of considering . . . appointment . . . of any public officer. . . ." A.C.A. § 25-19-106(c)(1) (Repl. 2002).[6]
I have previously opined that a Board may meet in executive session to consider disciplining a poll worker. Op. Att'y Gen. 2008-115. My opinion hinged on a determination that a poll worker is a public officer for FOIA purposes. See id. *Page 12 
For the reasons stated in my answer to your eleventh question, I believe the Chair is a public officer for FOIA purposes. In my view, then, the Board can fairly be said to be appointing a public officer when it elects its Chair under A.C.A. § 7-4-105(a). Accordingly, it is my opinion that, under the plain meaning of the words used in the statute, a Board may, if it wishes, choose to consider in executive session its choice of a Chair, provided it complies fully with all other applicable FOIA requirements, including without limitation A.C.A. § 25-19-106(c)(4), which in my view requires the formal election to occur in public session.
Assistant Attorney General J. M. Barker prepared this opinion, which I approve.
Sincerely,
 DUSTIN McDANIEL Attorney General
DM:JMB/cyh
[1] Because your request does not request my opinion on the point, I accept for purposes of discussion that a quorum court may by ordinance impose procedural rules on that county's Board. My acceptance of your question's implication should not be interpreted as my official opinion to that effect.
[2] A Board's duties unquestionably include some requiring discretion and deliberation. See, e.g., A.C.A. § 7-5-101(a)(1)(A), (b)(1) (Supp. 2009) (Board shall establish and may alter election precinct boundaries). It follows, in my view, that a Board is a deliberative body.
[3] The definition was enacted in 1969.Act 465 of 1969, Art. 1, § 1(c). At that time, some of the officials named in the definition were elected annually. See, e.g., A.C.A. § 14-43-412(b) (Repl. 1998) (referring to annual elections of municipal officials; enacted as part of Act 1 of 1875, which also provided for some one-year terms). But there are no longer annual elections to fill any of the offices referred to in the definition. Predecessors in this office have opined, in essence, that where annual elections are no longer held and a statute provides that a successor will be elected "at the first annual election . . . after [a] vacancy" occurs, the word "annual" may be ignored and the successor will be elected at the first biennial election after the vacancy. Op. Att'y Gen. 2006-123, 2000-087 (interpreting A.C.A. § 14-43-412(b)). In my view, the definition of "general elections" in A.C.A. § 7-1-101(14) should be similarly interpreted.
[4] Commissioners serve three-year terms. A.C.A. § 7-4-102(e)(1). It seems likely that in some instances a Chair's two-year term may be cut short by the expiration of his or her three-year term as a Commissioner. It appears to be the view of the State Board of Election Commissioners that a new Chair may be elected in such a case at any regular Board meeting after the Board's membership is restored to three Commissioners.
Arkansas State Board of Election Commissioners, Frequently AskedQuestions, Question 23, http://www.state.ar.us/sbec/FAQ.html (last visited May 4, 2011). I view that interpretation as reasonable and appropriate.
[5] The statute provides that "[a]ny meeting of two (2) or more commissioners when official business is conducted shall be public and held pursuant to the Freedom of Information Act. . . ." A.C.A. § 7-4-105(b). The "any meeting . . . shall be public" language could be interpreted to mean that each Board meeting must be public in its entirety and that a Board may not meet in executive session. But as I stated in Op. Att'y Gen. 2008-115, it is my view that the language means that the entire FOIA, including the part permitting executive sessions, applies to a Board's meetings.Cf. A.C.A. § 14-116-308(d) (Repl. 1998) (regional water distribution district boards formerly subject to rule stating that "[e]ach meeting . . . shall be open to the public, and the board shall at no time go into executive session"; statute since amended to permit executive sessions under FOIA; see
A.C.A. § 14-116-308(d)(2) (Supp. 2009)).
[6] While one might not consider a Board to be a body that ordinarily has public employees or officers subject to its supervision, it is my view that a public body that only occasionally supervises such persons may, in appropriate circumstances, use the FOIA's executive sessions rule. See, e.g., Op. Att'y Gen. 2008-115 (county board of election commissioners), 2000-132 (quorum court). *Page 1