Mr. Kerry M. Hicks, Chairman Campaign for Comprehensive Legal Reform 9 Hughes Road Oden, Arkansas 71961
Dear Mr. Hicks:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the popular name and ballot title for a proposed constitutional amendment. Your popular name and ballot title are as follows:
 Popular Name THE COMPREHENSIVE LEGAL REFORM AMENDMENT OF 2008 Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION WAIVING THE SOVEREIGN IMMUNITY OF THE STATE AND PROVIDING FOR DAMAGE REMEDIES FOR JUDICIAL, PROSECUTORIAL, AND ATTORNEY MISCONDUCT IN CIVIL CASES; MANDATING THE DISSOLUTION OF THE ARKANSAS SUPREME COURT COMMITTEE ON THE UNAUTHORIZED PRACTICE OF LAW; PROVIDING FOR DUE PROCESS OF LAW IN UNAUTHORIZED PRACTICE OF LAW PROCEEDINGS; PROHIBITING THE DELEGATION OF THE SUPREME COURT'S AUTHORITY TO ANY ADMINISTRATIVE BODY OR THE COURT'S APPOINTMENT OF ANY PERSON TO ANY OFFICE OR POSITION OUTSIDE OF THE JUDICIAL BRANCH OF THE GOVERNMENT; *Page 2 
MANDATING A COURT'S NOTIFICATION OF THE ARKANSAS DEPARTMENT OF HUMAN SERVICES FOR INVESTIGATION OF ALLEGATIONS OF CHILD ABUSE OR NEGLECT AND APPOINTMENT OF LICENSED COUNSEL FOR INDIGENTS ACCUSED OF CHILD ABUSE OR NEGLECT; MANDATING AUDIOVISUAL RECORDING OF PROCEEDINGS BEFORE A COURT OF RECORD; AND SETTING FOUR YEAR TERMS OF OFFICE FOR SUPREME COURT JUSTICES AND LIMITING THE SAID TERMS TO NO MORE THAN TWO CONSECUTIVE FOUR YEAR TERMS
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition. Neithercertification nor rejection of a popular name and ballot title reflectsmy view of the merits of the proposal. This Office has been given noauthority to consider the merits of any measure.
In this regard, A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. In addition, following Arkansas Supreme Court precedent, this office will not address the constitutionality of proposed measures in the context of a ballot title review unless the measure is "clearly contrary to law." Kurrus v. Priest, 342 Ark. 434, 29 S.W.3d, 669
(2000); Donovan v. Priest, 326 Ark. 353, 931 S.W.2d 119 (1996); andPlugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that thepopular name and ballot title honestly, intelligibly, and fairly setforth the purpose of *Page 3 the proposed amendment or act. See Arkansas Women's Political Caucus v.Riviere, 283 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must *Page 4 
reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your popular name and ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal.[1] I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities in your text. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
I refer, in a non-exhaustive list, to the following ambiguities:
 1. Section 1(A) of your proposed amendment states that "It is hereby declared to be the public policy of the State of Arkansas to waive sovereign immunity from civil suit for misconduct resulting in violation of a party's civil rights by any judge, prosecutor, or attorney in a civil case." At least two ambiguities arise from this language. First, it is not entirely clear in which types of cases, civil or criminal, judicial or attorney misconduct must occur before sovereign immunity is to be waived. Your measure addresses sovereign immunity "for misconduct resulting in violation of a party's civil rights by any judge, prosecutor, or attorney in a civil case." I am uncertain as to the impact of the words "in a civil case," or what precisely these words modify. I am uncertain whether the words "in a civil case" modify the word "attorney" and thus refer to misconduct engaged in by attorneys in civil cases,[2] or whether the words "in a civil case" modify the entire preceding sentence, and refer to the fact that sovereign immunity will be waived when a litigant *Page 5 
brings "a civil case" alleging misconduct.[3] The latter construction would seem redundant to the earlier words in the same sentence waiving sovereign immunity "from civil suit." The difference is important, because it determines in which types of cases sovereign immunity will be waived. Second, sovereign immunity, under current law, immunizes the State not just from damages, but from suit. See
Arkansas Constitution, art. 5, § 20 ("The State of Arkansas shall never be made a defendant in any of her courts"); and DHS v. Crunkleton, 303 Ark. 21, 791 S.W.2d 794 (1990) ("Sovereign immunity is jurisdictional immunity from suit.") Section 1(a) of your measure, however, waives sovereign immunity for "misconduct resulting in violation of a party's civil rights. . . ." Your measure thus waives sovereign immunity only in cases in which misconduct resulting in a civil rights violation actually occurred. A question arises as to how this conclusion can be made without a trial of the matter, held to determine whether "misconduct" has occurred, and whether that conduct resulted in a "violation of a party's civil rights." A lawsuit would have to proceed against the State in order to determine the point upon which your measure hinges the waiver of sovereign immunity. But at that point sovereign immunity has already been waived, by subjecting the State to suit in its own courts. It is impossible for me to summarize these important points for the voters in a certified ballot title for your measure without clarification of the ambiguities.
 2. Section 1(B) of your measure contains an ambiguity along the same lines discussed above. It states that "Notwithstanding any other state or federal civil remedy available, an aggrieved party may file suit against the State of Arkansas in the Pulaski County Circuit Court for recovery for damages within three *Page 6 
years of the date of the occurrence, or discovery of the occurrence, of such misconduct described in subsection A of this section." Again, it is impossible to know in which cases "misconduct described in subsection A" has occurred without a trial of the relevant facts. It is thus impossible to know, prior to a trial of the matter, in which cases an aggrieved party may file suit.
 3. Section 2 of your proposed Amendment states as follows:
 The Arkansas Supreme Court shall dissolve its Committee on the Unauthorized Practice of Law, as the purpose of the said Committee is to define and prohibit, not to regulate, the practice of law by non-attorney members of the general public, and as there has been no regulation set forth by the Supreme Court to regulate the practice of law by non-attorneys since the Committee was established by the Supreme Court by per curium [sic] order on December 18, 1978.
 Although the first clause of this sentence is fairly straightforward, I am uncertain how or whether to summarize the remaining language in a ballot title for your measure. The remaining language addresses the purpose of the Committee. The language seems unnecessary in light of the fact that the Committee will be abolished under your measure. It may therefore be confusing to the electorate to summarize such language in a ballot title for your measure. On the other hand, there is a risk that its omission would be deemed material upon a ballot title challenge. It appears that language has been inserted by way of explaining why your measure abolishes the Committee, and the reasons why such abolition is desirable. As stated in State ex rel. Berry v. Thurston, 159 P. 92, 96 (Wash. 1916), however, "A law is a rule of action. An argument is not." The inclusion of this language in your *Page 7 
measure thus creates difficulty in drafting a ballot title. See Op. Att'y Gen. 2007-248.
 4. Section II (B) of your measure provides that:
 No person shall be held to answer to a charge of engaging in the unauthorized practice of law but by a court of law upon summons or warrant of arrest based on violation of a valid Arkansas law enacted by the Legislature[4] or by the people, nor shall he or she be deprived of the due process or equal protection of the law or to a trial by a jury of his or her peers as in any other civil or criminal case;
 Authorization to act as an attorney by a party and demonstrable competence exhibited by the person so authorized shall serve as a defense against any claim of the unauthorized practice of law. . . .
 Again, several ambiguities arise from this subsection. First, the language "held to answer to a charge" is ambiguous. I am uncertain whether this language refers only to an investigation or civil judicial action by the Committee on the Unauthorized Practice of Law, or whether it would also preclude a private party to a civil action from raising an issue concerning the unauthorized practice of law in a pending civil case and seeking redress from a court on that basis. The Committee on the Unauthorized Practice of Law does not have exclusive authority to determine such issues. See, e.g., American Abstract Title Co. v. Rice, 358 Ark. 1, 186 S.W.3d 705 (2004). Although the abolition of any inquiry other than a criminal proceeding may be your intention, this intention is not apparent from the language used. I thus am uncertain how to summarize this point. Second, the words "demonstrable *Page 8 
competence" are in my opinion ambiguous. Your measure proposes to make consent of a party and "demonstrable competence" a defense to a criminal charge of the unauthorized practice of law. Presumably this would be a determination for the fact-finder in the criminal proceeding. It is unclear, however, what factors would be taken into account to determine "demonstrable competence" or how a fact-finder will make this determination in a given criminal proceeding. Under current law, competence to act as an attorney is demonstrated by completion of a rigorous course of study and graduation from law school, moral fitness, and passage of the bar examination. See, Rules Governing Admission to the Bar, Rules XII and XIII. To the extent your measure purports to authorize persons to act as attorneys without satisfying these requirements, the level of competence of such persons to act will be of serious concern to the voters. Although I could simply repeat the words "demonstrable competence" in a ballot title summarizing your measure for the voters, that action may not survive a ballot title challenge at the Arkansas Supreme Court. See, e.g., Christian Civic Action Comm. v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994), (use of words "additional racetrack wagering" in ballot title, where taken directly from the measure, were nonetheless misleading to voters and required striking measure from the ballot).
 5. Subsection II (C) of your measure states that "Neither Amendment 28 to the Arkansas Constitution, nor any other provision of the Arkansas Constitution shall be construed by any court or any executive or legislative body as authorizing the Arkansas Supreme Court to delegate its authority and duty under the Constitution to any administrative body, or to appoint any person to any office or position outside of the judicial branch of the government." I am uncertain, as an initial matter, whether subsection II(C) of your measure has reference only to the Arkansas Supreme Court's powers to regulate the practice of law under Arkansas Constitution, *Page 9 
Amendment 28, or to other powers as well. The references to "any other provision of the Arkansas Constitution," the Supreme Court's "authority and duty," and appointments to "any office or position," raise an issue in this regard. It is thus unclear, for example, whether your measure would impact such actions as the appointment of special masters by the Supreme Court under Rule 6-5 of the "Rules of the Supreme Court and Court of Appeals of the State of Arkansas." In addition, the Arkansas Supreme Court's power to appoint persons to offices outside the judicial branch (or, more properly, to exercise powers unrelated to the "administration of justice"), is already somewhat circumscribed by the separation of powers doctrine (see, e.g., Spradlin v. Arkansas Ethics Commission, 314 Ark. 108, 858 S.W.2d 684
(1993). I am thus uncertain as to the scope of this subsection or how it would change current law.
 6. Section III of your measure states that:
 In all cases involving allegations of child abuse or neglect the court in which a protective order or a change in the custodial status of the child is sought, the Arkansas Department of Human Services shall be notified by the court for investigation of the said allegations and, if a party alleged to be engaging in child abuse or neglect is indigent, the court shall promptly appoint a licensed attorney at law to represent the party.
 A syntax error in the first clause in this sentence prevents me from determining its exact operation. I cannot determine the impact of the phrase "the court in which a protective order or a change in the custodial status of the child is sought," or how this phrase relates to the remainder of the sentence.
 7. Section IV of your measure states that: "Beginning with the election year 2010 the term of office for all justices of the *Page 10 
Arkansas Supreme Court shall be four years and no person may serve more than two consecutive terms." I assume, from the language used, that it is your intention to limit any person running for a term of office in election year 2010 or later to a four year term. I also assume that such requirement would not affect the balance of terms of Justices elected to office in prior years. This point is not made entirely clear in the language used, however, and as a consequence, I am somewhat uncertain as to how to summarize it in a ballot title for your measure.
 8. Finally, I must note that your measure contains at least five separate topics for the electorate to consider: sovereign immunity, the unauthorized practice of law, the appointment of counsel in certain child abuse cases, the recording and availability of records of court proceedings, and term limitations for members of the Arkansas Supreme Court. As noted by one of my predecessors in Op. Att'y Gen. 2002-346, "Although the law does not prohibit you from including multiple subjects in one measure, an attempt to do so may render the measure inordinately complex and incomprehensible to the voter."
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the *Page 11 
confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v.Priest, 341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed popular name and ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure, popular name and ballot title. See A.C.A. § 7-9-107(c). You may, after clarification of the matters discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted popular name and ballot title may be necessary. I will perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
DUSTIN McDANIEL
Attorney General
[1] I will note in this regard that two of my predecessors have noted that the use of the word "reform" in a popular name lends unacceptable partisan coloring to the merits of a proposal. See, e.g., Ops. Att'y Gen. 2003-127 and 99-199.
[2] I assume that your reference to attorneys refers to government attorneys. A waiver of sovereign immunity would be unnecessary as to private attorneys.
[3] It seems clear that misconduct by prosecutors would occur in criminal cases. I am uncertain, however, as to whether misconduct by judges under your measure may occur in either a civil or criminal case in order for sovereign immunity to be waived.
[4] You do not specifically reference A.C.A. § 16-22-501 in your measure, but your measure may have reference to this provision.